PEOPLE v DAVIS

1. Appeal and Error—Criminal Law—Prosecutors—Prejudicial
   Remarks—Curative Instructions—Preserving Question—
   Lack of Objection.
   The absence of an objection to prejudicial remarks by the prose-
   cutor in his closing argument precludes appellate review if the
   prejudicial effect of the remarks could have been rectified by a
   timely request for curative instruction; but, if the prejudice was
   incurable the court must reverse notwithstanding the lack of
   any objection.

2. Criminal Law—Defenses—Self-Defense—Juries—Instructions.
   A comprehensive instruction on all of the aspects of the law of
   self-defense is not warranted where portions of the instruction
   have no relevance to the case being tried and the jury would be
   better instructed if only those aspects of self-defense pertinent
   to the case were given.

Appeal from Recorder's Court of Detroit, John
R. Murphy, J. Submitted Division 1 November 8,
1974, at Detroit, (Docket No. 19291.) Decided Janu-
ary 29, 1975. Leave to appeal applied for.

Elisha Davis III was convicted of manslaughter.
Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Patricia J. Boyle,* Principal
Attorney, Research, Training & Appeals, and *Lu-
venia D. Dockett,* Assistant Prosecuting Attorney,
for the people.

References for Points in Headnotes
[1] 5 Am Jur 2d, Appeal and Error §§ 624–627.
    75 Am Jur 2d, Trial §§ 315–317.
[2] 75 Am Jur 2d, Trial § 727.

*Carl Ziemba,* for defendant on appeal.

Before: J. H. Gillis, P. J., and Allen and Peterson,* JJ.

Peterson, J. Defendant was convicted by jury of manslaughter, MCLA 750.321; MSA 28.553, sentenced to a term of years in prison, and appeals. He asserts that the prosecutor in closing argument made prejudicial remarks to the jury and that there was error in the court's instructions on self-defense.

On the afternoon of May 25, 1973, Patricia Harper, age 13, and Tavna Coucil, age 14, were walking home when defendant attempted a conversation with them. The testimony is sketchy, but Patricia testified that defendant grabbed her arm, asked her name, and when she did not reply, called her a square like Tavna and said that he should throw her down and choke her. Defendant's testimony put the incident in the form of a jest. It is clear, in any event, that this ended the encounter, that there was no sexual molestation, solicitation or moral improprieties and that the defendant and the girls went their own ways.

Unfortunately, on returning home, Tavna told her grandmother that a man had been "messing" with them. The statement was overheard by her uncle, Ozzie Wallace, who, if not dead drunk was at least drunk, and soon to be dead.[1] Wallace forthwith sought out defendant, demanded to know why defendant had been "messing" with his niece, and, as defendant started to reply, struck defendant and knocked him down. Defendant got

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The report of the autopsy of Ozzie Wallace indicated that he was (1) dead, (2) thrice gunshot, (3) a narcotics addict and (4) alcohol-intoxicated at the time of death.

up with a gun in his hand. Wallace kept fighting, defendant fired one shot into the ground and three into Wallace. This is the people's case; defendant's testimony makes a stronger case for self-defense justification. The point, however, is that on the people's case, defendant was not made out to have been a salacious accoster of Patricia and Tavna. Neither was he shown to be the provocateur of Wallace's assault, let alone the aggressor.

In his rebuttal summation,[2] the prosecutor attacked defendant as a man who "went around trying to accost a thirteen and fourteen year old girl", who should have been caring for his baby but instead "had all this time to try to pick up a couple girls", who was afraid "of getting a punch in the jaw that he had coming for what he did", and who saw "nothing immoral about it". At another point the prosecutor spoke of "the girl he did molest". Other comments by the prosecutor bordered upon or crossed the line of permissible advocacy, but were not of such nature as would, in themselves, warrant reversal since defense counsel made no objection at any point.

"The absence of an objection (to prosecutor's remarks in his closing argument) in the trial court precludes appellate review, unless this Court's failure to consider the issue would result in a miscarriage of justice. The basic standard employed in determining whether the remarks resulted in a miscarriage of justice is whether the allegedly prejudicial effect of the remarks could have been rectified by curative instruction. If so, the failure to object is fatal to the claim on appeal." *People*

---

[2] We note, incidentally, that this was really the prosecutor's argument in chief and not rebuttal. We disapprove of his tactic of making a sham initial closing argument of no real content and then delivering the substance of his argument when the defense has no opportunity to respond. See *State v Peterson,* (1968 Mo) 423 SW2d 825; 26 ALR3d 1400.

*v Pacely,* 51 Mich App 67, 71; 214 NW2d 561, 562–563 (1974).

Had an objection been made at the first comment suggesting an immoral solicitation, instruction would not only have offset the prejudice but would undoubtedly have forestalled other improper comments. After the second such improper comment, the efficacy of a curative instruction might have been more questionable. By the time the argument ran its uninterrupted course, however, it was too late. The prejudice was incurable and we must reverse notwithstanding the lack of any objection.

A comment on the self-defense instruction is in order. The instruction given, to which there was no objection, contained no misstatements of the law, and is essentially that sustained in *People v Plozai,* 50 Mich App 131; 212 NW2d 721 (1973). Absent objection, it would not warrant comment. It was, however, a comprehensive instruction on *all* of the aspects of the law of self-defense. We suggest that on retrial the jury would be better instructed only on those aspects of self-defense pertinent to the case; *i.e.,* on the testimony given there was no relevance to instructions on conduct responsive to mere threats or premised on the possibility that defendant was the aggressor.

Reversed and remanded for new trial.