PEOPLE v McGEE

1. CRIMINAL LAW—JURY—PROSECUTOR'S REMARKS—FACTS NOT IN EVIDENCE.

It is improper for a prosecuting attorney to make a statement to the jury of a fact which has not been introduced into evidence.

2. CRIMINAL LAW—APPEAL AND ERROR—PROSECUTOR'S REMARKS—MISCARRIAGE OF JUSTICE—STATUTES.

A conviction will not be reversed unless a miscarriage of justice affirmatively appears from the record taken as a whole where a defendant failed to object to an improper statement of a prosecutor (MCLA 769.26; MSA 28.1096).

3. CRIMINAL LAW—APPEAL AND ERROR—PROSECUTOR'S REMARKS—FAILURE TO OBJECT—CURATIVE INSTRUCTIONS.

Failure to object to a prosecutor's remarks is fatal to a claim of error on appeal where a simple curative instruction could easily have rectified whatever prejudicial effect the remarks might have had.

4. CRIMINAL LAW—COURTS—INSTRUCTIONS TO JURY—ERROR—EVIDENCE—MUTUAL FIGHT.

A court's refusal to instruct on the doctrine of mutual fight was not error where there was no evidence introduced to support a theory of mutual fight.

5. CRIMINAL LAW—COURTS—LESSER INCLUDED OFFENSES—REQUEST TO CHARGE—REFUSAL—ERROR—EVIDENCE.

A court's refusal of a defendant's request to charge on the lesser included offenses of aggravated assault and assault and battery in a trial for assault with intent to commit murder was not error where there was no evidence upon which the jury could have based a conviction of the lesser offenses.

Appeal from Recorder's Court of Detroit, Samuel

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4] 75 Am Jur 2d, Trial § 745 *et seq.*
[3] 75 Am Jur 2d, Trial §§ 919–922.
[5] 21 Am Jur 2d, Criminal Law §§ 185, 494.

C. Gardner, J. Submitted October 15, 1975, at Detroit. (Docket No. 21011.) Decided December 8, 1975.

Barbara McGee was convicted of assault with intent to commit murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Ronald P. Weitzman,* Assistant Prosecuting Attorney, for the people.

*Roger L. Wotila,* Assistant State Appellate Defender, for defendant.

Before: V. J. Brennan, P. J., and Bashara and R. M. Maher, JJ.

V. J. Brennan, P. J. On April 2, 1974, Barbara McGee was convicted by a jury of assault with intent to commit murder in violation of MCLA 750.83; MSA 28.278. Defendant was subsequently sentenced to serve 3 to 15 years in the Detroit House of Correction and now appeals as of right.

The events in question took place on September 9, 1973, shortly after midnight. Emma Lamar, the complainant, was picked up by one Otis Burgess at her home and driven to the residence of defendant, Barbara McGee. Complainant testified that the purpose of the visit was to pick up a ring which belonged to her. Mrs. Lamar had previously pawned the ring and, needing more money, gave the pawn ticket to Mr. Burgess as security for a further loan. Mr. Burgess redeemed the ticket, apparently in contravention of the understanding,

and complainant therefore spoke to Mrs. Burgess on the phone in an effort to enlist her aid in regaining possession of the ring. During one of these conversations complainant apparently divulged information regarding a relationship between Mr. Burgess and another woman, defendant Barbara McGee.

When complainant and Mr. Burgess arrived at defendant's home, defendant emerged and entered the front seat of the Burgess automobile. Complainant was thus seated between Burgess and defendant in the front seat. Burgess confronted complainant with the fact that she had told his wife about his relationship with defendant. The following testimony was then elicited from complainant by the prosecutor:

"*Q*. Well, when he stated that you had told his wife about him and Barbara, what did you say?

"*A*. I admitted it. It told him that I told her—told—told him that I told her.

"*Q*. Tell us what you told him?

"*A*. I told her about him and Barbara because I couldn't get the ring back.

"*Q*. What did he say, then?

"*A*. Well, he says, 'Don't you know I could have gotten killed, me and Barbara both, if my wife had caught me coming out of the place that you told her I would be at?'

"*Q*. Uh huh.

"*A*. I asked him then what he was going to do to me. He said he wasn't going to do anything. She was going to do it for him.

"*Q*. What were you doing at that time?

"*A*. I still didn't know. It hadn't started at that time.

"*Q*. What happened then?

"*A*. During the whole time, she was talking. She was saying, 'Let's go up on Jefferson.' That is what Barbara said.

"*Q.* 'Let's go up on Jefferson'?

"*A.* Right.

"*Q.* That is what she said?

"*A.* Yes.

"*Q.* Okay.

"*A.* All right. The car started moving. I was pleading with them not to hurt me, or whatever, and I was sorry and that, and all sorts of things, you know, about it wouldn't happen again, this and that. And I told him that I had two kids. He said 'Barbara got kids, too. That doesn't mean anything to me.'

"*Q.* Was the car moving?

"*A.* The car was moving.

"*Q.* While this conversation was going on?

"*A.* Yes.

"*Q.* After the car got up on Jefferson, what happened?

"*A.* It turned into Belle Isle. That is when I really got terrified.

"*Q.* And what happened after the car turned into Belle Isle?

"*A.* Well, he went down a little side road. Before I knew anything, Barbara had stabbed me with a knife. The knife came out of nowhere. It came from here, and she stabbed me with a knife.

"*Q.* Where did she stab you, Miss Lamar?

"*A.* In my chest, on the left side. I immediately reached my hand up to protect myself from the knife. Then she brings out a hammer, which was wrapped in gauze and started hitting me on the head with it, hitting me all over.

"*Q.* When you reached your hand up, what happened?

"*A.* Well I caught the knife with this hand here (indicating). I am tusseling with her and trying to—I just can't even—it is hard to really explain. Just like I was fighting with her with the knife, trying to keep the knife from stabbing me again.

* * *

"*Q.* What did she do with the hammer?

"*A.* She was beating me about the head with it. She had the knife and he even mentioned to her, 'Don't

make it so bloody.' He even told her, 'I will drive to another spot where I can let you out with her. You can take care of her better if I let you out with her.' "

In her struggle complainant managed to fall out of the car. One Richard Magiere, who was on Belle Isle at the time, heard screaming, saw Miss Lamar running toward his car screaming for help. He took her to the island police.

Defendant's sole defense was that it was complainant who had drawn the knife, that a struggle ensued, and that complainant was stabbed during the struggle by defendant in an act of self-defense and a defense of Otis Burgess.

In closing argument, the prosecutor made the following statement:

"The words of Otis Burgess, just prior to this attack was 'Kill her and don't get too much blood in the car.' This Defendant took out a knife and stabbed Emma Lamar in the chest."

The trial judge denied a defense request to charge the jury on the lesser included offenses of assault and battery and aggravated assault.

Defendant contends on appeal that she was denied a fair trial by improper and prejudicial statements of the prosecutor in the closing arguments when he said, "The words of Otis Burgess, just prior to this attack was 'Kill her and don't get too much blood in the car' ".

It is improper for a prosecuting attorney to make a statement to the jury of a fact which has not been introduced into evidence. *People v Dane,* 59 Mich 550; 26 NW 781 (1886). Defendant cites us to *People v Aikin,* 66 Mich 460, 480; 33 NW 821, 829, 830 (1887), contending that this case, like *Aikin,* is an example of an overzealous and unfair

perversion of facts by the prosecutor to convict the accused.

The line between fair argumentation based on reasonable inference and unfair characterization amounting to perversion of facts is not an easy one to draw. Taken literally, the prosecutor clearly misstated what Burgess had said. A careful reading of the record, however, convinces us that this statement of the prosecutor was intended as hyperbole, and was so understood by the jury. Clearly, if complainant's testimony is believed by the jury, a reasonable inference to be drawn is that defendant was acting on Burgess' behest in attempting to kill complainant. We do not agree that the prosecutor's statements amounted to "unfair perversion of facts".

Even assuming *arguendo* that the prosecutor's statement was error, defendant failed to object, and this Court will not reverse unless a miscarriage of justice affirmatively appears. *People v Auer,* 393 Mich 667, 675; 227 NW2d 528 (1975), MCLA 769.26; MSA 28.1096. Taking the record as a whole, we think that any error there might have been was harmless beyond a reasonable doubt. *People v Robinson,* 386 Mich 551, 562; 194 NW2d 709, 713 (1972). Further, it appears that a simple curative instruction could easily have rectified whatever prejudicial effect the remarks might have had, and thus failure to object is considered fatal to the claim on appeal. *People v Davis,* 58 Mich App 159, 161; 227 NW2d 269, 271 (1975).

Defendant next contends that the trial judge committed reversible error by giving erroneous instructions on self-defense, and by failing to instruct on the doctrine of "mutual fight". Defendant argues that there are certain circumstances, such as when deadly force is used in response to

non-deadly force, that an aggressor does not lose his right of self-defense. As a general rule of black letter law, defendant is correct, but this argument misses the mark. Based on the evidence, the jury could have believed that defendant assaulted complainant with a knife or that complainant suddenly drew a knife and assaulted Burgess and defendant; thus, the facts do not present a situation where deadly force was used in response to non-deadly force. We do not believe that the jury could possibly have been misled by the judge's instructions, so whatever error there might have been was harmless. Likewise, there was no evidence introduced to support a theory of mutual fight, and therefore the judge's refusal to instruct thereon was not error. *People v Reed,* 393 Mich 342, 349, 350; 224 NW2d 867, 870, 871 (1975). See *People v Parks,* 57 Mich App 738, 745; 226 NW2d 710, 713 (1975).

Defendant next contends that the trial judge erred in refusing her request to charge the jury on the lesser included offenses of aggravated assault and assault and battery. This contention is without merit, because there was no evidence upon which a jury could have based a conviction of these offenses. *People v Bills,* 53 Mich App 339, 353; 220 NW2d 101, 108 (1974).

We have examined defendant's other contention of error and find it to be without merit.

Affirmed.