PEOPLE *v.* POPE.

108   361
118   300

108      361
s66ᴺᵂ  213
129   ¹555
129   ²555
129   ³555

108      361
150      703

1. CRIMINAL LAW—HOMICIDE—REMARKS OF COUNSEL.

A statement by the prosecuting attorney in his opening to
the jury upon the trial of a woman for the murder of her hus-
band, that the respondent had procured an assignment to her-
self of certain policies of insurance on her husband's life, is
not prejudicial, although it afterwards appears that, instead
of the policies having been assigned to her, she was the bene-
ficiary named therein.

2. SAME.

A remark by the prosecutor in such case that the relations
between the respondent and the man who did the killing were
filthy and improper is cured by an instruction that there is no
testimony to show improper relations between the parties,
and that the argument of the prosecutor upon that point
must be rejected.

3. SAME.

The expression of an opinion by the prosecuting attorney
as to the guilt of the respondent is not ground for a reversal,
where the jury were expressly instructed to disregard such
opinion.

4. SAME—LOST INSTRUMENT—PAROL EVIDENCE.

Where, on the trial of a criminal case, the attorney for
the respondent states that he will not insist upon a written
notice to produce a paper claimed to have been left with the
respondent, and which the people desire to introduce in evi-
dence, and, on the following morning, says that he is unable
to find any such paper, parol evidence of its contents is ad-
missible.

5. SECONDARY EVIDENCE—HARMLESS ERROR.

Error in the admission of secondary evidence of the con-
tents of an instrument is cured by the subsequent introduc-
tion of the paper by the opposite party.

6. TRIAL—OBJECTIONS TO TESTIMONY—APPEAL.

An assignment of error based upon an objection to evi-
dence which does not state the grounds of the objection will
not be considered.

7. SAME—ADMISSION OF INCOMPETENT TESTIMONY—PRACTICE.

Where the answer to a question admissible as a preliminary inquiry contains incompetent or immaterial matter, the proper practice is by motion to strike it out.

8. CRIMINAL LAW—WITNESSES—DUTY OF PROSECUTOR.

The prosecution upon a trial for murder having rested without calling certain witnesses whose names were indorsed on the information, respondent's counsel demanded that they be called and examined, so that he could cross-examine them. *Held*, that by producing said witnesses, and tendering them to the defense for cross-examination, the prosecuting attorney performed his full duty, it appearing that none of them were eye-witnesses to the transaction.

9. TRIAL—ILLNESS OF WITNESS—PRACTICE.

Where a witness becomes ill before her cross-examination is finished, so that it cannot be completed, the remedy is by motion to strike out her testimony, and an exception to the · refusal of the court to compel the production of the witness for further cross-examination will not be sustained.

10. CRIMINAL LAW—INSTRUCTIONS TO JURY.

It is not error in a criminal case to refuse instructions based upon the testimony of certain witnesses, unless such testimony forms the sole basis upon which a conviction can be had. Where, however, the result depends upon the testimony of a single witness, it is proper for the court to instruct the jury that, if they disbelieve his testimony, or if it does not convince them of the guilt of the respondent beyond a reasonable doubt, they should acquit.

11. SAME—HOMICIDE—INTENT.

Upon a prosecution for murder, the motive for which was alleged to be the obtaining of insurance on the life of the deceased, an instruction that, as bearing upon the intent of the respondent, the jury should consider the fact that four years before, when the deceased was sick, and carrying a large amount of insurance payable to the respondent, the latter properly administered medicine to him, although an overdose would have caused his death, is properly refused.

Error to recorder's court of Detroit; Chapin J. Submitted January 30, 1896. Decided February 18, 1896.

Nellie W. Pope was convicted of murder in the first de-

gree, and sentenced to imprisonment for life in the state prison at Jackson.   Judgment affirmed.

*Henry M. Cheever, John Atkinson*, and *G. X. M. Collier*, for appellant.

*Allan H. Frazer*, Prosecuting Attorney, and *Henry A. Mandell*, Assistant Prosecuting Attorney, for the people.

GRANT, J.   The respondent was convicted of murder in the first degree.   The victim was her husband.   One Brusseau, who was at the time a servant and nurse in the house, killed Mr. Pope with a hatchet.   The theory of the prosecution was that the murder was committed under an arrangement agreed to between the respondent and Brusseau.   Brusseau confessed the crime, told how it was done, and testified to the arrangement between respondent and himself.   The motive was claimed to be to obtain a large insurance on Mr. Pope's life in favor of respondent.

1. Complaint is made that the assistant prosecuting attorney, in his statement to the jury, said that Mrs. Pope had all the policies of insurance, with the exception of $3,000, assigned to herself, and that, on a certain occasion, when the officers went to her house, "she pretended she was sick, and could not understand the officers' questions;" also, that the prosecuting attorney was permitted to express his opinion as to the guilt of the prisoner, and, also, to argue to the jury that "the relations between the prisoner and Brusseau were filthy and improper."

The opening statement to the jury was made in good faith.   It was shown that certain policies were assigned to Mrs. Pope, and the deed of assignment introduced in evidence.   Even if it were true that she was the beneficiary in all the policies, the statement that they were assigned to her could not have prejudiced the jury.

The argument of the prosecuting attorney is not given in the record. The court, at the request of the respondent's attorneys, instructed the jury that "the prosecuting attorney has no right to express his personal opinion as to the guilt of the prisoner. The jury should disregard his opinion, except so far as it is supported by the testimony." After giving this request, the court further explicitly charged them that they must disregard the opinions of the attorneys, and be guided solely by the evidence, and also instructed them that there was no testimony to show improper relations between Brusseau and Mrs. Pope, and that the argument of the assistant prosecutor upon this point must be rejected. Under this charge, it is unnecessary to determine whether there was any testimony to justify the comments. It is doubtful if the court was correct in so stating. We find nothing upon this branch of the case to justify further comment or a reversal.

2. One Crawford, an attorney, was introduced on the part of the defense, and produced an affidavit, made by Brusseau, which contradicted his confession, and his testimony in court. The prosecutor subjected this witness to a rigid cross-examination, which is now claimed to have exceeded proper bounds. No objection was made to the admission of the testimony, and it is now too late to object. We think, also, that the examination was proper.

3. One Wurzer testified that he was called by Brusseau, at the request of Mrs. Pope, to go to Mr. Pope's house on the Saturday night prior to the murder; that Mrs. Pope wanted him, as a notary public, to acknowledge a paper made out by her attorney; that he saw and read the paper, and left it in the hands of Mrs. Pope. Some discussion arose between counsel, in the court, about the paper, in which counsel for the respondent said they did not insist upon a written notice to produce the paper, whereupon the court stated they might produce it the next morning. On the following morning, one of the attor-

neys for the respondent stated that he was unable to find any such paper, whereupon the court allowed parol evidence of its contents. We think it was admissible; but the point becomes immaterial, because the paper was afterwards produced and admitted in evidence.

4. Mr. Frank P. Guise testified that he was an attorney, and acted for an insurance company which had a $10,000 policy on Mr. Pope's life; that a note for $253 was given for the first payment, signed by Mrs. Pope; that in 1891 he went to Mrs. Pope, and demanded this policy of her, and also one for another company. He was then asked, "What reason did you give why you demanded the policies back?" Respondent's counsel objected to the question, but stated no grounds therefor. An assignment of error based upon such an objection will not be considered by this court. *People* v. *Moore*, 86 Mich. 134. As a preliminary question it was proper. If the answer contained incompetent or immaterial matter, the proper practice would have been a motion to strike it out, which was not done.

5. When the prosecution rested, respondent's counsel called the attention of the court and of the prosecutor to the fact that certain witnesses, whose names were indorsed upon the information, had not been called, and demanded that they be called and examined in behalf of the people, so that the defense could cross-examine them. The prosecuting attorney stated that the evidence of these witnesses was cumulative. They were, however, produced, and tendered to the defense for cross-examination. None of these were eye-witnesses to the transaction. The prosecution had done all that the law required. *People* v. *Henshaw*, 52 Mich. 564; *Wellar* v. *People*, 30 Mich. 23.

6. One Mrs. Montgomery, a witness for the prosecution, became ill before the close of the cross-examination, fainted, and was carried from the court room. The defense reserved the right to further cross-examine her if they desired. Shortly after the prosecution rested, one of

the respondent's counsel stated [that he desired to ask Mrs. Montgomery three or four questions. She was then too ill to appear in court. The prosecutor then offered to go with prisoner's counsel to her home, and take her deposition, which, however, was declined. No motion was made to strike out the testimony of the witness, nor was any reason shown why a further cross-examination was desired. *People* v. *Kindra*, 102 Mich. 147. The proper course for the respondent would have been a motion to strike out the testimony. Having failed to do so, she cannot now be heard to object because a further cross-examination was desired.

7. Several errors are assigned upon the oral charge of the court, and upon the refusal to give certain requests. Forty requests were preferred on behalf of the respondent, 29 of which were given, and covered fully the entire theory of her case. No possible room, under the instructions of the court, was left for the jury to determine the case upon any other theory than that she and Brusseau had entered into a conspiracy for the murder of her husband, and that it was successfully carried out. Some of the requests refused called the attention of the court to the testimony of certain witnesses, and asked specific instructions based upon it. This is not the duty of the court, unless the testimony forms the sole basis upon which conviction can be had. If the result depends upon the testimony of one witness, it would be entirely proper for the court to instruct the jury that, if they disbelieve his testimony, or if it does not convince them beyond a reasonable doubt, they should acquit.

Testimony was offered on the part of the people to show threats and propositions made by Mrs. Pope in 1891 to kill her husband. Testimony on the part of the respondent showed that Mr. Pope met with an accident in 1891, in consequence of which he was confined to his bed for some time; that his physician prescribed morphine, which, if administered in larger doses than prescribed, might have produced death; that Mrs. Pope then had the

care of her husband, and administered the morphine; that she did not administer any larger doses than were prescribed; and that he then held insurance upon his life to the amount of $40,000. Two requests were preferred upon this testimony, to the effect that the jury should take this into consideration as bearing upon the question of any intent on her part to take the life of her husband. This took place four years before the murder. The request, if given, would substantially have said to the jury that the fact that one had an opportunity to murder, and the motive for it, four years before, but did not improve it, would be evidence of no intent to murder at the time the deed was committed. We think the requests were properly refused. The question for the jury was her intent in 1895, and not in 1891. The testimony as to her statements and conduct in 1891, and the testimony in explanation thereof, were competent; and it was the province and duty of counsel to argue the facts, and their effect, to the jury; and it was also proper for the jury to consider them. It was neither essential nor proper for the court to select this piece of testimony from all the rest in the case, and specifically charge the jury upon it.

All the other assignments of error involve principles which are familiar to the profession. They relate chiefly to the presumption of innocence, the credibility to be given to witnesses, including an accomplice, the duty of each juror to be convinced beyond a reasonable doubt, and the rule that, in order to convict, the facts proved must be all consistent with the theory of guilt and inconsistent with the theory of innocence. We do not deem it important to discuss the alleged errors. The instructions were correct and explicit, and fully guarded all the rights of the respondent.

The conviction is affirmed.

The other Justices concurred.