PEOPLE v PACELY

1. CRIMINAL LAW—ARGUMENT OF COUNSEL—PROSECUTOR'S REMARKS—
   PREJUDICE—APPEAL AND ERROR—PRESERVING QUESTION—MIS-
   CARRIAGE OF JUSTICE.

   The absence of an objection in a trial court to a prosecuting
   attorney's allegedly prejudicial remarks during closing argu-
   ment precludes appellate review, unless the Court of Appeals'
   failure to consider the issue would result in a miscarriage of
   justice.

2. CRIMINAL LAW—ARGUMENT OF COUNSEL—PROSECUTOR'S REMARKS—
   PREJUDICE—MISCARRIAGE OF JUSTICE—INSTRUCTIONS TO JURY—
   APPEAL AND ERROR—PRESERVING QUESTION.

   The basic standard employed in determining whether a prosecut-
   ing attorney's allegedly prejudicial remarks during closing
   argument resulted in a miscarriage of justice is whether the
   allegedly prejudicial effect of the remarks could have been
   rectified by a curative instruction; if so, the failure to object is
   fatal to the claim on appeal.

3. CRIMINAL LAW—ARGUMENT OF COUNSEL—PROSECUTOR'S REMARKS—
   RELATIONSHIP TO EVIDENCE—INSTRUCTIONS TO JURY.

   A prosecuting attorney's forceful argument that a defendant was
   lying and characterizing a defendant's testimony concern-
   ing a complainant's alleged homosexual activity at a highway
   rest area as "obnoxious", "terrible", and "fantastic" was not
   improper where review of the prosecutor's entire argument
   discloses that the comments were based on his careful analysis
   of the evidence submitted to the jury and not on his indepen-
   dent, personal views regarding the guilt of the accused; the
   remarks were not so flagrant or prejudicial as to render a
   curative instruction, if requested, ineffective.

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
     63 Am Jur 2d, Prosecuting Attorneys § 27.
[4] 29 Am Jur 2d, Evidence §§ 425–427.
     Modern status of rule governing admissibility of evidence obtained
       by unlawful search and seizure. 50 ALR2d 531.
[5–7] 1 Am Jur 2d, Abduction and Kidnapping § 11 *et seq.*

4. Searches and Seizures—Evidence—Motion to Suppress—Timeliness—Waiver of Illegality.

   The absence of a motion to suppress waives a defendant's Fourth Amendment objection to the introduction into evidence of a letter which had been sent by him and seized by state officers while he was in jail awaiting trial where the record indicates that the defense apparently had knowledge, before trial, of the prosecutor's acquisition of the letter and failed to move to suppress the introduction of the letter prior to trial.

5. Kidnapping—Asportation—Instructions to Jury.

   The failure of a trial court to instruct the jury on the element of asportation in connection with a kidnapping charge constitutes reversible error.

6. Kidnapping—Asportation—Secret Confinement—Question of Fact—Instructions to Jury.

   Asportation or movement is an essential element of the crime of kidnapping, except perhaps kidnapping involving secret confinement; the existence of asportation is a question of fact, and a jury charge omitting an instruction on asportation is inadequate, even absent a request.

7. Kidnapping—Statutes—Secret Confinement—Asportation—Question of Fact—Instructions to Jury.

   Secret confinement may serve as an alternative element instead of asportation to complete the crime of statutory kidnapping; the existence of asportation or some alternative element, such as secret confinement, is a question of fact for the jury under appropriate instruction.

Appeal from Washtenaw, John W. Conlin, J. Submitted Division 2 October 2, 1973, at Lansing. (Docket Nos. 13434, 13435.) Decided January 14, 1974. Leave to appeal applied for.

Joseph Pacely was convicted of armed robbery and kidnapping. Defendant appeals. Affirmed in part and reversed in part.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *John L. Thompson,* Assistant Prosecuting Attorney, for the people.

*Michael C. Moran* and *Frank Zebot,* Assistants State Appellate Defender, for defendant.

Before: McGREGOR, P. J., and BRONSON and CARLAND,* JJ.

McGREGOR, P. J. Defendant was charged with armed robbery, MCLA 750.529; MSA 28.797, and kidnapping, MCLA 750.349; MSA 28.581, and convicted by a jury of both. He was sentenced to concurrent terms of 25 to 40 years in prison and now appeals both convictions.

True to form in cases of this sort, the jury was presented with two hopelessly inconsistent accounts of the events giving rise to the prosecution of the defendant. We begin with the complaining witness's version.

On the evening of January 3, 1971, the complainant stopped at a rest area on the I-94 expressway near Ann Arbor to use the restroom. After complainant had returned to his automobile, the defendant allegedly approached the car, opened the door on the passenger's side, and asked for assistance in starting his automobile. The complainant told defendant that he would not give him a push, but would give him a ride to a service station. The defendant got in the front seat of complainant's car, and a woman, who complainant thought was defendant's wife, entered the back seat. As the car exited from I-94, the defendant fired a shot into the floorboard of the car and complainant observed a small pistol in defendant's hand. The defendant told complainant to give his wallet to the defendant's female companion, which complainant did. Complainant was then told to drive to Ypsilanti, where two acquaintances of

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

defendant joined the trio and defendant took over the driving, while the young woman kept the gun trained on the complainant. The group proceeded to Inkster, where the defendant stopped at a house and picked up some "dope or pills or something", after which complainant was taken a little further, told to get out of the car, and handcuffed to an abandoned automobile. After a few minutes, complainant was able to free himself and contact the police.

The defendant's version of the events which transpired on that cold, snowy January evening is more interesting, though perhaps less credible, than that offered by the complainant.

According to defendant, he and his female companion, a prostitute, had gone to the rest area for the purpose of soliciting truck drivers. As defendant entered the restroom at this area, he encountered complainant engaged in homosexual activity with some unidentified third party. The complainant then allegedly requested the defendant to find him a girl to participate in an orgy. Defendant told complainant that his companion would not do that, but that he could find a girl in Inkster who would. Defendant testified that he left the rest area in his own car and drove toward Inkster, followed by the complainant in his car. At this time, defendant decided to steal complainant's car and, when they arrived in Inkster, defendant persuaded the complainant to allow him to use complainant's car to locate the other girl. Defendant claimed that complainant gave him the allegedly stolen money to buy gas.

The defendant was apprehended in complainant's car; the license plates had been changed and a spent .25-caliber shell and misfired cartridge of the same caliber were found in the automobile.

In his primary and supplemental briefs on appeal, defendant posits six issues for our consideration. Having carefully examined all six, we find that only three are of sufficient merit to warrant discussion here.

The first issue is whether the prosecuting attorney's closing argument was sufficiently prejudicial to deny the defendant a fair and impartial trial. We conclude that it was not.

Initially, it should be noted that defense counsel objected to none of the remarks made by the prosecutor in his closing argument. The absence of an objection in the trial court precludes appellate review, unless this Court's failure to consider the issue would result in a miscarriage of justice. The basic standard employed in determining whether the remarks resulted in a miscarriage of justice is whether the allegedly prejudicial effect of the remarks could have been rectified by a curative instruction. If so, the failure to object is fatal to the claim on appeal. *People v Bennett,* 46 Mich App 598; 208 NW2d 624 (1973).

We deem it unnecessary to quote at length the comments upon which defendant founds his claim of error. Suffice it to say that the prosecutor forcefully argued that the defendant was lying and characterized his story concerning the complainant's homosexual activity at the rest area as "obnoxious", "terrible", and "fantastic". Although such remarks, standing alone, would appear improper, our review of the prosecutor's entire argument discloses that the comments were based on his careful analysis of the evidence submitted to the jury.

Responding to an argument similar to defendant's, this Court, in *People v Cowell,* 44 Mich App 623, 628–629; 205 NW2d 600, 603 (1973), recently stated:

"The defendant takes particular exception to the prosecutor's argument that he, the defendant, was lying and to the prosecutor's argument that he treated the child as a thing, a super ball, or a rag doll. The record shows that the prosecutor did indeed argue quite vigorously that the defendant was lying, and, based on the evidence, he suggested several excellent reasons for so concluding. The record also shows that the prosecutor did argue that the defendant treated the child as a thing, a super ball, or a rag doll. Under the prosecutor's theory of the case this was exactly what he had to prove. The remarks were both related to and supported by the evidence. Of course, a prosecutor must avoid inflaming the prejudices of a jury, but there is no requirement that he phrase his argument in the blandest of all possible terms. The prosecutor is, after all, an advocate and he has not only the right but the duty to vigorously argue the people's case. We find no reversible error."

Likewise, the prosecutor's remarks in this case were premised on his analysis of the evidence and not on his independent, personal views regarding the guilt of the accused. Thus, the remarks, though arguably improper, were not so flagrant or prejudicial as to render a curative instruction, if requested, ineffective. In the circumstances, we perceive no miscarriage of justice and hence no reversible error.

The second issue is whether the prosecutor's use of a letter, during cross-examination, which had been sent by the defendant and seized by state officers while the defendant was in jail awaiting trial, violated the latter's Fourth Amendment rights.

While the defendant was in the county jail awaiting trial, he wrote a letter to the woman who was his companion on the night of January 3, 1971. The letter, which contained both incriminating and exculpatory phrases, essentially urged the

woman to testify on his behalf. Defendant gave the letter, in a stamped envelope, to a jailer and asked that it be mailed. Instead of mailing the letter, the jailer turned it over to the prosecutor. At trial, the prosecutor, without objection from the defendant, used the claimed incriminating portions of the letter in cross-examining the defendant. Thereafter, defense counsel introduced the entire letter into evidence. Defendant now contends that the prosecutor acquired the letter via an unlawful search and seizure, and that its use at trial violated his Fourth Amendment rights.

Perhaps unfortunately, defendant's failure to move to suppress the letter, prior to trial, renders unnecessary our consideration of the constitutional issue involved. Since the record indicates that defense apparently had knowledge, before trial, of the prosecutor's acquisition of the letter, the absence of a motion to suppress waives the Fourth Amendment objection. *People v Ferguson,* 376 Mich 90; 135 NW2d 357 (1965); *People v George Martin,* 31 Mich App 624; 188 NW2d 41 (1971); *People v Duerson,* 35 Mich App 223; 192 NW2d 309 (1971).

The third issue we consider is whether the failure of the trial court to instruct the jury on the element of asportation in connection with the kidnapping charge constitutes reversible error.

We are compelled to answer in the affirmative. Although the record undoubtedly contains sufficient evidence from which the jury could have found the asportation element, the prosecutor concedes that the trial court failed to instruct the jury regarding that element.

In *People v Adams,* 389 Mich 222; 205 NW2d 415 (1973), our Supreme Court held that asportation or movement is an essential element of the

crime of kidnapping, except perhaps kidnapping involving secret confinement; that the existence of asportation is a question of fact; that a jury charge omitting an instruction on asportation is inadequate, even absent a request. See also *People v Ford,* 47 Mich App 420; 209 NW2d 507 (1973), and *People v Leszczynski,* 49 Mich App 555; 212 NW2d 255 (1973).

To avoid reversal, the prosecutor urges that this case involves secret confinement and, hence, no charge was necessary regarding asportation. In so doing, he misconstrues the *Adams* decision. Although *Adams* does indicate that secret confinement may serve as an alternative element to complete the crime of statutory kidnapping, it is also clear that the existence of asportation or some alternative element, such as secret confinement, is a question of fact for the jury under appropriate instruction. *Adams, supra,* 238; 205 NW2d 423.

One interesting point is raised in the defendant's supplemental brief. The defendant assumes that, if we reverse his kidnapping conviction, we must remand for resentencing on the armed robbery conviction which we affirm. This issue is not properly before this Court.

Affirmed in part; reversed in part.

All concurred.