PEOPLE v HICKS

1. CRIMINAL LAW—EVIDENCE—ADMISSION OF EVIDENCE—SIMILAR
   ACTS—STATUTES.

   Proof of a defendant's similar acts are admissible as evidence to
   show the defendant's scheme, plan, or system (MCLA 768.27;
   MSA 28.1050).

2. CRIMINAL LAW—EVIDENCE—SIMILAR ACTS—FORMAL NOTICE—FAIL-
   URE TO OBJECT—APPEAL AND ERROR.

   The prosecution's failure to give formal notice to a defendant of
   the prosecution's intent to introduce proof of the defendant's
   similar acts as evidence of the defendant's scheme, plan, or
   system was not reversible error where a review of the record
   indicates that the defense was in no way surprised by the
   introduction of this evidence and where there was no objection
   at trial to the introduction of the prior acts based on the lack of
   formal notice to the defendant, and where no motion was made
   by the defendant that formal written notice must be given.

3. APPEAL AND ERROR—OBJECTIONS—REASON FOR OBJECTION—PRE-
   SERVING OBJECTION FOR APPEAL.

   The reason for an objection must be stated or be reasonably
   apparent in order to preserve the objection for appellate re-
   view.

4. CRIMINAL LAW—EVIDENCE—PRIOR CRIMES—INSTRUCTIONS TO JURY
   —LIMITING INSTRUCTIONS—FAILURE TO REQUEST.

   A trial judge's failure to give a limiting instruction to a jury
   regarding the introduction of proof of a defendant's prior acts
   as evidence to show a defendant's plan, scheme or motive was
   not reversible error where there was no proper request made
   by the defendant for such an instruction because there is no
   absolute rule or requirement that the trial judge give such an
   instruction.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 29 Am Jur 2d, Evidence § 623 *et seq.*
[3] 5 Am Jur 2d, Appeal and Error § 545.
[4] 30 Am Jur 2d, Evidence § 1175.

Appeal from Bay, Leon R. Dardas, J. Submitted June 2, 1976, at Lansing. (Docket No. 23696.) Decided August 3, 1976.

Bennie J. Hicks was convicted of larceny in a building. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Eugene C. Penzien,* Prosecuting Attorney, and *Peter Dahm,* Assistant Prosecuting Attorney, for the people.

*Gerald W. Pergande,* for defendant.

Before: ALLEN, P. J., and D. E. HOLBROOK, JR., and E. H. PAPP,* JJ.

E. H. PAPP, J. On June 28, 1974, defendant was found guilty by a jury of larceny in a building, in violation of MCLA 750.360; MSA 28.592. He was subsequently sentenced to a term of 2 to 4 years in prison, and appeals of right.

Defendant's conviction was the result of the theft of packages of meat in a Kroger store in Essexville, Michigan. Defendant and a woman had entered the store together. When they approached the check-out counter, the manager of the store, Mr. Bennett, noticed the woman's purse was bulging with packages of meat and overheard her tell defendant she did not feel well. The woman said she was returning to the car and left the store without paying for anything. Defendant then said he had to leave the store, claiming he had to get money to pay for the groceries or that he had to check on the woman.

Bennett was able to tell his co-manager what

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

the defendant would do before the defendant did it because five weeks earlier exactly the same thing had happened. On both occasions the woman's purse was bulging, but on the prior occasion, the manager was not "positively sure" that a theft had occurred. On January 26, he positively saw meat on the person of the woman as she walked out.

After the defendant left the store without paying, Bennett and his co-manager followed the defendant and the woman. The co-manager stopped the woman and they began to struggle. As Bennett went to his aid, the woman began "pulling meat out from her body". Defendant initially had gone in the opposite direction, but at this point returned to where the woman was, and took two packages from under his belt and/or shirt and gave them to Bennett. The manager had not seen any meat packages on the defendant as he left the store. The packages of meat taken from defendant and the woman each bore the Kroger food store labels. This version of the events was corroborated by other witnesses.

Defendant testified that on January 26, 1974, "a guy called Jack" who lived in Saginaw, picked him up and drove to Bay City. A young lady named Miss Lawrence was with them. He and Miss Lawrence went to a store to buy food, but she forgot to give him money to pay for the food when at the counter she claimed she had a headache and said she had to go to the drug store to get something for it. He saw someone follow her out of the store but did not know what was happening.

Defendant claimed he told someone at the store that he had to go back to the car to get money or food stamps to pay for the food. He went into the parking lot and got into a green four-door Chevy which he thought was Jack's car. Witness Ward

Kellogg had previously testified that on the day in question he was at Wicke's, near the Kroger store, and saw the defendant in his 1966 four-door Chevy sedan, which he had left unlocked in the parking lot. From this car, defendant saw three or four men grabbing Miss Lawrence so he went over to help her. On the way he stooped and picked up her coat, in which he felt heavy packages of meat which he turned over to Bennett. Defendant also claimed that "Jack had gone south to Alabama or Turkey or someplace" and he hadn't seen him since.

Miss Lawrence corroborated defendant's version of the events. She admitted taking meat without paying for it, but claimed she did not tell defendant about it. She also claimed that the meat handed to the manager by defendant had been taken from her coat.

On rebuttal, the security guard from Kroger's was recalled and testified that he was holding Miss Lawrence's coat when it was removed, and that this occurred at about the same time defendant handed meat to Mr. Bennett.

The first issue raised by defendant is whether the prosecution is required to give defendant notice of the intention to use prior similar acts in order to prove a common scheme, plan or system of committing crimes.

Michigan allows proof of a defendant's similar acts to show his scheme, plan or system. MCLA 768.27; MSA 28.1050. The validity of this statute has been upheld numerous times and in many different kinds of cases. *Cf. People v Nawrocki,* 376 Mich 252; 136 NW2d 922 (1965), *appeal dismissed,* 382 US 455; 86 S Ct 654; 15 L Ed 2d 521 (1966) (passing of other bad checks), *People v Allen,* 351 Mich 535; 88 NW2d 433 (1958) (proof of previous

safe cracking), *People v Johnston,* 328 Mich 213; 43 NW2d 334; 20 ALR2d 1001 (1950) (other acts of bribery and conspiracy). But the question of formal notice of intent to introduce similar acts being given by the prosecution is new and no Michigan case can be found directly on this point.

Defendant relies on cases from other states for direct support of his proposition. He urges this Court to adopt the position of the Minnesota Supreme Court in *State v Spreigl,* 272 Minn 488, 496–497; 139 NW2d 167 (1965). In that case the Minnesota court held that:

"[W]here the state seeks to prove that an accused has been guilty of additional crimes and misconduct on other occasions, although such evidence is otherwise admissible under some exception to the general exclusionary rule, it shall not hereafter be received unless within a reasonable time before trial the state furnishes defendant *in writing* a statement of the offenses it intends to show he has committed, described with the particularity required of an indictment or information, subject, however, to the following exceptions: (a) Offenses which are part of the immediate episode for which defendant is being tried; (b) offenses for which defendant has previously been prosecuted; and (c) offenses which are introduced to rebut defendant's evidence of good character." (Emphasis supplied.)

However, we find Federal and state cases in which this proposition has been expressly rejected. In *McConkey v United States,* 444 F2d 788 (CA 8, 1971), *cert den,* 404 US 885; 92 S Ct 223; 30 L Ed 2d 168 (1971), the defendant had been convicted of three violations of the Federal wire fraud statute for using interstate telegrams to fraudulently obtain loans. At trial, evidence of similar fraudulent acts by the defendant within two or three months after the last act charged in the indictment was

admitted. The Circuit Court of Appeals noted that the defendant made no contention that the evidence at trial was insufficient to support the defendant's guilt; no challenge was made to any part of the jury instructions; no claim at trial was made of surprise or prejudice in the preparation or presentation of the defendant's defense; and no allowance of time had been requested by the defendant to consider or deal with the evidence in question. The court found no basis for reversal in defendant's claim and did not suggest in any way that notice of the intent to use similar acts might be required by due process of law or any other constitutional consideration.

In *United States v McGrady,* 508 F2d 13 (CA 8, 1974), *cert den,* 420 US 979; 95 S Ct 1408; 43 L Ed 2d 661 (1975), the Eighth Circuit had an opportunity to review the *McConkey* decision. The court noted that the appellants had asked it to adopt the rule of *State v Spreigl.* It did not do so, stating that the contention that notice was required for evidence of similar acts to be introduced at trial had been raised and rejected in *McConkey.*

Other state courts have also refused to adopt the *Spreigl* rule. See *Whitty v State,* 34 Wis 2d 278; 149 NW2d 557 (1967), *Cheney v State,* 44 Wis 2d 454; 171 NW2d 339 (1969), *State v Iaukea,* 56 Hawaii 343; 537 P2d 724 (1975). We note with interest that in the State of Minnesota, where the *Spreigl* rule originated, the Minnesota Supreme Court in interpreting the *Spreigl* rule in *State v Grilli,* — Minn —; 230 NW2d 445, 450 (1975), said:

"The underlying purpose of the *Spreigl* notice is to avoid surprise to the defendant by giving him time to prepare a defense to the charges. * * * Such is the case here, where the defense was well aware prior to trial of the state's intention to proceed with its presentation in

a chronological manner, treating the November 9 through November 13 period as one behavioral incident.[1] Defense counsel was aware of the state's intent before the trial began and was thus estopped from claiming surprise. In addition, when these unrelated incidents were brought out at the trial, no *Spreigl* objections were interposed by the defense. If we were to order new trials where defense counsel did not object to the evidence, it would become customary defense strategy to refrain from objecting and then attempt to get another chance at a jury trial if defendant is convicted. On this basis alone we could say that defendant waived his objection. In addition, these acts were not particularly stressed by the state. We view defendant's claim of error as harmless at most."

In the instant case, defendant's attorney was well aware of the prosecution's intent to use the evidence of the prior incident at the Kroger store. A review of the record discloses that defense counsel knew that such evidence was given at defendant's preliminary examination before a magistrate some four months before the date of trial. There was no surprise and the defendant had ample time to prepare a defense. Further, when testimony was being given at the trial, at no time did the defendant object to the testimony of the prior incident on the basis that the prosecutor failed to give notice of the intent to use such evidence. Rather, the basis for objection during the course of the trial was that such evidence was irrelevant, immaterial, hearsay or highly prejudicial. The trial judge overruled defense counsel's objections on these grounds at least twice during the trial. No motion was made by the defendant that formal written notice must be given; no motion *in limine* was made prior

---

[1] In this case, a *Spreigl* notice had been given concerning a November 13th sale of marihuana arranged by the defendant, but such notice had not been given concerning the defendant's transfer of two capsules of codeine on November 9.

to trial based on the prosecutor's failure to give formal notice; no objection to the evidence of prior incidents during trial was based on time or lack of formal notice; no motion at all of formal notice being required was made by the defendant until he argued it to the jury.

We do not accept or adopt the *Spreigl* rule, particularly in the absence of controlling authority or court rule. To do so would encourage defendants not to make proper objection at the proper time and then to raise the issue on appeal. For this Court to reverse because of the failure of the prosecution to give formal notice would also ignore the rationale of the *Spreigl* rule, that is, the avoidance of surprise. It has long been the rule in Michigan that in order to preserve an objection for appellate review the reason for objection must be stated specifically or be reasonably apparent. *People v Moore,* 86 Mich 134; 48 NW 693 (1891).

Defendant concedes this question is a novel one in Michigan. Therefore, it cannot be said that lack of formal notice was a ground for objection which was readily apparent to the trial jduge at the time the objection should have been made. In *People v Cormandy,* 16 Mich App 517, 520; 168 NW2d 430, 431 (1969), *lv den,* 382 Mich 756 (1969), this Court said:

"The general rule that objections to evidence must be specific is firmly imbedded in Michigan's jurisprudence.

'It is the duty of a party objecting to the admission of evidence, to state the grounds of his objection with perspicuity.' *Hoard v Little* (1859) 7 Mich 468, 470."

In the other issue raised by defendant, we find no error on the part of the trial judge in not giving the limiting instruction regarding defendant's prior similar acts, where no request is made for

such instruction and no objection is raised to the court's failure to give such instruction. A careful review of what took place in chambers between both counsel and the judge does not reveal any request for a limiting instruction. The ambiguous and inarticulate language of counsel cannot be said to be a legitimate objection. To so consider would again encourage trial counsel to be deliberately vague in making objections so that later, on appeal, defendant could raise a valid legal issue. There is no absolute rule or requirement that a trial judge give an instruction on the limited purpose for which evidence of a prior offense was admitted, even though such an instruction should have been given. The Supreme Court so held on the basis that defense counsel might have refused such limiting instruction, possibly because it could be counter-productive to emphasize the prior acts to the jury. *People v Chism,* 390 Mich 104; 211 NW2d 193 (1973), *People v DerMartzex,* 390 Mich 410; 213 NW2d 97 (1973), *accord, People v Streetman,* 59 Mich App 49; 228 NW2d 539 (1975), *lv den,* 394 Mich 798 (1975). Since no proper request for a limiting instruction was made by the defendant in this case, we do not find that the trial judge committed reversible error.

For the reasons stated herein, defendant's conviction is affirmed.