PEOPLE v RONALD GREEN

OPINION OF THE COURT

1. CRIMINAL LAW—PROSECUTOR'S BEHAVIOR—HARMLESS ERROR—DE-
FENDANT'S OBJECTIONS.

Prosecutorial behavior that grossly exceeds proper bounds is
incurable, whether or not the defendant objects; such conduct is
not harmless error beyond a reasonable doubt.

2. APPEAL AND ERROR—CRIMINAL LAW—HARMLESS ERROR—JURY.

An error committed in a criminal trial is not harmless error
where it is reasonably possible that in a trial free of the error,
even one juror might have voted to acquit the defendant.

3. CRIMINAL LAW—PROSECUTOR'S BEHAVIOR—PROPER BOUNDS—TEST-
ING CREDIBILITY.

A prosecutor's method of testing a defendant's credibility ex-
ceeded the proper bounds of prosecutorial behavior where (1)
over the defendant's objection, which had been sustained by the
trial court, the prosecutor continued to accuse the defendant of
participating in the charged killing with two named individuals
where there was no evidence presented to implicate the defend-
ant with the two individuals; (2) the prosecutor injected irrele-
vant and prejudicial facts into the trial by asking certain
inflamatory background questions regarding the defendant's
personal life and financial status where the defendant was not
on trial for any violations closely related to the questions
asked; and (3) the prosecutor, in his closing argument, vouched
for the veracity of one of the witnesses and added the weight of
his office to his demand that the jury return a verdict of guilty.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3–7] 75 Am Jur 2d, Trial § 192 *et seq.*
[2] 5 Am Jur 2d, Appeal and Error §§ 776–819.
[3] Propriety and effect of prosecuting attorney's argument to jury
indicating his belief or knowledge as to guilt of accused. 50
ALR2d 766.
[8] 40 Am Jur 2d, Homicide § 503.

Dissent by D. E. Holbrook, J.

4. Criminal Law—Prosecutor's Remarks—Closing Arguments—
    Inferences from Evidence.

*A prosecutor is entitled to comment in his closing argument on
the evidence and draw reasonable inferences therefrom; he is
free to relate the facts to his theory of the case and must have
reasonable latitude in arguing proper inferences to be drawn
from the evidence produced at trial.*

5. Criminal Law—Argument of Counsel—Prosecutor's Remarks—
    Appeal and Error—Preserving Question—Curative In-
    structions.

*The absence of objection in a trial court to possible errors in the
prosecution's closing remarks where curative instructions were
possible, bars appellate review.*

6. Appeal and Error—Criminal Law—Prosecutor's Behavior—
    Cross-Examinations—Proper Objections—Curative Instruc-
    tions.

*A trial court should not be reversed for alleged improprieties by a
prosecutor during the cross-examination of the defendant
where the alleged errors would not have risen had the defend-
ant made proper objection and requested curative instructions
at trial.*

7. Criminal Law—Prosecutor's Questions—Facts Not In Evidence
    —Objections by Defendant.

*A defendant has a duty to object to a prosecutor's questions based
on facts not yet in evidence, and a trial court does not have a
duty to raise such objection on its own motion; therefore, an
abuse of discretion on the part of the trial court, in not raising
the question on its own motion, is not shown where there is
some support for the facts allegedly assumed by the prosecutor
and where the defendant did not properly object at trial.*

8. Homicide—First-Degree Murder—Evidence—Defendant's Per-
    sonal Life—Lack of Objection—Relevance of Questions.

*It is not reversible error to allow a prosecutor to introduce
evidence regarding a defendant's personal life, such as: his
possession of a fraudulent drivers license, lack of employment
and a permanent address, the fact that he never filed a tax
return or received a social security number, and that he had
lived with a woman who was not his wife, where the defendant
did not make a proper objection to the introduction of such*

*evidence in the trial court and where the questions are of some
relevance in a trial for first-degree murder.*

Appeal from Wayne, Blair Moody, Jr., J. Submitted January 6, 1977, at Detroit. (Docket No. 25662.) Decided March 31, 1977. Leave to appeal applied for.

Ronald D. Green was convicted of first-degree murder. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Research, Training & Appeals, and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant.

Before: ALLEN, P. J.; and D. E. HOLBROOK and D. C. RILEY, JJ.

D. C. RILEY, J. In challenging his jury-based conviction on a charge of first-degree murder, defendant Ronald Demetrius Green raises eight assignments of error. Of these, one warrants discussion and reversal, namely, the conduct of the trial prosecutor during cross-examination of defendant and during closing argument.

For approximately three days, the jury deliberated the guilt *vel non* of defendant. Following their requests for the rereading of three witnesses' testimony and for the redefinition of (1) premeditation, (2) burden of proof vis à vis the respective roles of prosecutor and defense counsel, and (3) the possible verdicts, the jury convicted defendant of the crime charged.

Although one witness definitely placed defend-

ant at the scene of the slaying, the bulk of the people's case hinged upon circumstantial evidence.[1]

Given the lengthy jury deliberations and the relative dearth of direct evidence implicating defendant, we are unable to say that the frequent instances of prosecutorial misconduct which occurred below were harmless beyond a reasonable doubt. As Judge McGregor, writing for himself and Judge Holbrook in *People v Christensen,* 64 Mich App 23, 33; 235 NW2d 50 (1975), observed:

"In order to hold that the error in this case does not require reversal, however, we must also be able to say that it was 'harmless beyond a reasonable doubt'. If it is reasonably possible that in a trial free of the errors complained of, even one juror might have voted to acquit the defendant, then the error was not harmless, and the defendant must be retried."

We hold that the prosecutor's behavior exceeded proper bounds in, at least, the following particulars:

1. In the face of defendant's repeated denials, and over defense counsel's objection which was sustained, the prosecutor continually insisted that defendant had participated with two individuals

---

[1] Evidence adduced at trial revealed that three men dressed in coveralls approached the decedent, Archie Walker, in the parking structure of Metropolitan Airport. The decedent resisted their efforts to seize him, so instead they gunned him down. A van and an automobile, both containing evidence relating to the killing, were found at the scene but defendant was not. Defendant admitted renting the van for two persons who, he claimed, had agreed to use the vehicle to sell meat in various neighborhoods. In return, they were to have shared their profits from the meat vending with him. According to defendant, the two men later died—one from an illness and the other from a bullet wound. Repeatedly, however, defendant denied any knowledge of or involvement in the murder of Walker.

The prosecution's theory of the case is amply set out in the dissenting opinion.

(Messrs. Hill and Shannon) in killing Archie Walker. The prosecutor made these accusations even though no evidence implicating defendant with these men had been presented and even though the prosecutor doubted his own ability to supply the requisite nexus. Furthermore, despite the trial judge's ruling that the prosecutor cease questioning defendant regarding Hill and Shannon, the prosecutor nevertheless returned to the prohibited topic in summation:

"Where are the two men? Where are those men that could come in here and say, 'We wanted him to rent the truck for us.' They are dead. He told us they were dead. What proof do we have of that? Mr. Green simply says they are dead. Were they ever real people? Can you believe a man who will under the table get a driver's license, a bogus driver's license, who will use another man's name? Were there ever two such individuals? *I submit that I have given some names during this trial, a man named Shannon and a man named Hill that are as live as can be.* Mr. Green may very well have made up a couple of other names because those men cannot speak here." (Emphasis added.)

2. In an ostensive attempt to test defendant's credibility, the prosecutor elicited from defendant admissions regarding defendant's failure to maintain steady employment, defendant's failure to register for the draft and defendant's failure to file income tax returns over a period of years. In addition, the prosecutor repeatedly emphasized defendant's cohabitation with a woman not his wife (although the prosecutor later indicated he was not condemning this relationship as illicit).

It must be remembered, however, that defendant was not on trial for poverty, or for violation of selective service, income tax or sexual conduct laws. Nevertheless, the prosecutor saw fit to inject

tangential issues into the trial which could only divert the jury's attention and possibly persuade them of defendant's bad character. *People v Johnson*, 393 Mich 488; 227 NW2d 523 (1975). The prosecutor's appellate attempt to distinguish the instant case from *Johnson* will not wash. Once we accept the notion that impoverished persons have a greater motive to kill for hire than the well-to-do we effectively establish a two-tiered standard of justice and demolish *pro tanto* the presumption of innocence. Imaginative minds can easily conjure reasons why an impecunious defendant might commit any number of crimes in return for monetary gain; but that is not to say that the law should accept these proffered reasons or that the wealthy should escape the suspicion of criminality that plaintiff urges we apply to the poor.[2]

If the prosecutor truly intended to shake defendant's story, other less prejudicial means were available. Defendant testified that one of the men with whom he had agreed to vend meat had died of a kidney ailment and that the other had died from a bullet shot into the home of defendant's mother. Defendant further testified that the incident had been reported to the authorities and that defendant himself had been shot in the arm at the same time. Surely, these allegations were suscepti-

---

[2] The dissent suggests that defendant's failure to object frees this Court of the duty to decide whether questions relating to defendant's poverty necessarily deprived the accused of a fair trial. As the transcript clearly indicates, however, defendant did object, and pointedly so:

"Q. [MR. EASTON, *Assistant Prosecuting Attorney*] Who was supporting you? Who was providing your clothes and your meals and your ability to live?

"MR. RICARD: *[Defense Attorney]* Your honor, excuse me, I am going to object. I know it is Cross Examination but I wonder if we are not starting to get a little bit afield here and this question is immaterial and irrelevant as to what we are involved in here.

"THE COURT: I will overrule. I will permit it. There is a possible materiality. It is a fair question on Cross Examination."

ble of verification. At the very least, the prosecutor could have asked defendant to display the scar from the bullet wound. Having opted instead to employ inflammatory methods of testing credibility, the prosecutor cannot now be heard to complain.

3. The prosecutor, at closing argument, asked the jury "on behalf of the People, Officer Pack and myself" to return a verdict of guilty as charged. In essence, this solicitation is nothing more than a thinly veiled statement that the prosecutor vouched for the veracity of witness Pack and also buttressed this endorsement with the weight of his office. See *People v Erb,* 48 Mich App 622; 211 NW2d 51 (1973), *People v Warren,* 65 Mich App 197; 237 NW2d 247 (1975), and *People v Hunt,* 68 Mich App 145; 242 NW2d 45 (1976).

Taken in the aggregate, the foregoing illustrations, combined with the many lesser transgressions too numerous to cite, prevent this Court from indulging the prospect that the errors were harmless beyond reasonable doubt. That defendant did not enter adequate objection is of no consequence, *People v Humphreys,* 24 Mich App 411; 180 NW2d 328 (1970), *Erb, supra, Hunt, supra,* for this case was rife with incurable prosecutorial error and, accordingly, the damage was irremediable.

Reversed and remanded.

ALLEN, P. J., concurred.

D. E. HOLBROOK, J. *(dissenting).* This writer respectfully dissents. The majority opinion finds that this case was "rife with incurable prosecutorial error" and that "defendant did not enter adequate objection is of no consequence". This writer cannot concur in such a conclusion in this instance and,

furthermore, believes that had defendant entered proper objection, the alleged errors introduced by the prosecution would have been cured.

The alleged prosecutorial errors occurred during cross-examination of defendant and during the prosecution's closing statement. This writer is faced with the least difficulty in finding no error in the prosecution's closing argument. The theory of the people's case was that defendant had been part of a plan to murder the victim by kidnapping him from an airport parking structure. This plan was apparently part of an organized crime "hit". The evidence linking defendant to this crime was largely circumstantial and involved elaborate and extensive proofs. The trial itself lasted approximately two weeks and has been recorded in over ten volumes of transcript. The jury was properly instructed that the prosecution's comments were not evidence. This Court has said many times that:

"For the first time on appeal defendant cites certain portions of the prosecutor's closing argument as being so improper and prejudicial as to deny defendant his constitutional right to a fair trial.

"A prosecutor is entitled to comment on the evidence and draw reasonable inferences therefrom. He is free in final argument to relate the facts to his theory of the case. In this case, the prosecutor attempted to establish a permissible relationship between his theory and the facts in evidence. Defendant made no objection at the time the allegedly offensive statements were made. There was no request for curative or corrective instructions. Hence the error, if any, was waived." *People v Duke,* 50 Mich App 714, 717; 213 NW2d 769 (1973).

*People v Pacely,* 51 Mich App 67; 214 NW2d 561 (1974), and *People v Robert Hall,* 56 Mich App 10; 223 NW2d 340 (1974). Failure to object to possible errors in the prosecution's closing remarks, where

curative instructions were possible, bars appellate review. *People v Hall,* 396 Mich 650; 242 NW2d 377 (1976), *People v Robert Hall, supra, People v Humphreys,* 24 Mich App 411; 180 NW2d 328 (1970). The prosecution must have reasonable latitude in arguing proper inferences to be drawn from the evidence produced at trial. See *People v Davis,* 57 Mich App 505; 226 NW2d 540 (1975), *People v Wirth,* 108 Mich 307; 66 NW 41 (1896). However, defense counsel must respond to protect the defendant and raise objection to those comments which may exceed the proper bounds of closing statements. There was no objection to the prosecution's statements, and if they did, in fact, exceed the proper bounds of argument, they could have been cured by proper instructions.

The more difficult question involves alleged improprieties on the part of the prosecution during cross-examination of the defendant. The majority has issued a well-written opinion fully considering this question. However, this writer must respectfully disagree with their conclusion. This writer is forced to dissent on the basis that had the defendant made proper objection this error would not have risen. Early objection would have resulted in early instruction to the prosecution not to further inquire into those subjects which defendant objected to. Furthermore, the trial court could have instructed the jury to disregard any statements of the prosecution which were not proper.

The prosecution maintained that defendant had been part of an organized plan to murder the victim essentially alleging that this was an organized "hit" for profit. Coveralls similar to those used by employees of the parking structure were to be worn by the perpetrators of the crime and a U-Haul van used to transport the victim. The

prosecution presented evidence that defendant had rented the van, which defendant admitted at trial. Defendant was identified as being at the airport next to the van and also was seen standing next to a .38-caliber handgun which was dropped to the ground. A weapon similar to this was subsequently found in a Ford automobile in which also was found a soda pop can with defendant's fingerprints. The victim's death was caused by multiple gunshot wounds, including a .38-caliber bullet, although tests were unable to disclose the specific gun used. In the van were two sets of handcuffs, adhesive tape and two screwdrivers sharpened to a point. Coveralls were also found in the van which matched descriptions of those worn by two men who were struggling with the victim just prior to the victim's death. Defendant was not positively identified as one of the men, but he did fit a very general description. The circumstantial, though substantial, evidence convinced the jury that defendant was guilty beyond a reasonable doubt. Defendant now maintains, however, that the prosecution asked questions which assumed facts not in evidence and that the prosecution improperly referred to facts regarding defendant's personal life which were not relevant to the inquiry herein.

As to the questions based on facts not in evidence, the defendant had a duty to object. Defendant maintains that the court had a duty to raise this question on its own motion. I cannot agree in this instance, however. The court should not inject itself into substituting its own ideas of trial strategy for those of the parties. This was a very emotional and lengthy trial involving complex and lengthy proofs. The implication was that there was a paid "hit" involving organized crime. The prosecution should be entitled to reasonable latitude in

pursuing questions relating to its theory of the case. The determination of whether facts were not in evidence may have been a difficult question herein and it was incumbent upon defendant to raise this objection and not rely on the court to do so. Defendant did not properly object and there was some support for the facts allegedly assumed by the prosecution. There was no abuse of discretion on the part of the court in not raising this question on its own and if error was committed, it was not such as to require reversal. *People v Duke, supra.*

Defendant also maintains that the prosecution injected irrelevant and prejudicial facts into this trial by asking certain background questions regarding defendant's personal life. Information was adduced from defendant that indicated that he had an invalid out-of-state driver's license under a different name, had been unemployed for a substantial length of time, had no social security number, had lived at various addresses, including that of a woman to whom he was not married, had not registered for the draft and had never paid income taxes nor even filed income tax returns. The prosecution argues now that many of these factors are relevant to motive. It is contended that the fraudulent driver's license, the lack of employment, the lack of permanent address, the fact that defendant had no social security number and had never filed an income tax return indicates that defendant was a professional criminal and might engage in a "hit" for profit. Certainly these questions are of some relevance in this particular case. Contrast this with the recent Supreme Court cases of *People v Johnson,* 393 Mich 488; 227 NW2d 523 (1975), and *People v Hammond,* 394 Mich 627; 232 NW2d 174 (1975). In both of these cases similar

personal information did not bear any relevance to the crimes charged. Nevertheless, we need not decide whether introduction of such evidence was error because if it was, it was not of such magnitude as to demand reversal where not properly objected to at trial and where supported by some relevance.[1] Had defendant objected to such questions early, the court may well have limited inquiry into such issues, properly instructed the jury, and forbidden the prosecution to pursue such matters. We do not know strategically why counsel did not object. Yet this writer finds that defense counsel fully and very competently represented defendant at trial. Failure to object may well have been a tactical decision. Defendant's description of the events of the day in question adduced during direct examination was, however, very weak. Defendant did not properly object to most of the questions on cross-examination and the prosecution's case, though entirely circumstantial, was solid. If there was error, it was not such as to demand reversal absent proper objection. A careful reading of the transcript coupled with defendant's lack of objection persuades this writer that the questions did not interfere with defendant's having a fair trial. *People v Duke, supra,* at 717.

This writer votes to affirm.

---

[1] The portion of the transcript cited by the majority in footnote 2 of their opinion indicates some sort of an objection on the part of defendant. However, this writer must conclude that this brief, weak and vague attempt to limit cross-examination was insufficient to constitute a proper objection under the circumstances. *People v Hicks,* 70 Mich App 430; 245 NW2d 778 (1976), *People v Pope,* 108 Mich 361; 66 NW 213 (1896), *People v Moore,* 86 Mich 134; 48 NW 693 (1891).