PEOPLE v BALDWIN

1. Witnesses—Criminal Law—Res Gestae Witnesses—Production
   by Prosecution—Due Diligence—Discretion—Appeal and
   Error.

   A trial court's finding that the prosecution exercised due dili-
   gence in attempting to produce a res gestae witness for trial
   will be overturned on appeal only where an abuse of discretion
   is found.

2. Witnesses—Criminal Law—Statutes—Material Witnesses—
   Bond Requirement.

   A statute which permits a court of record to require a material
   witness in a criminal case to post bond in order to guarantee
   the witness's presence at trial may be invoked only where there
   is reason to believe that the witness will not be available when
   his testimony might become necessary (MCLA 767.35; MSA
   28.975).

3. Witnesses—Criminal Law—Res Gestae Witnesses—Material
   Witness Statute—Due Diligence—Statutes.

   A failure to make use of the material witness statutory procedure
   in order to detain a res gestae witness does not result in a
   failure of due diligence on the part of the prosecutor (MCLA
   767.35; MSA 28.975).

4. Appeal and Error—Criminal Law—Cross-Examination—Mis-
   carriage of Justice—Preserving Question.

   A criminal conviction will be reversed on appeal because of
   improper cross-examination by the prosecution only when nec-
   essary to prevent a miscarriage of justice where defense coun-
   sel failed to object to the improper questions.

---

References for Points in Headnotes
[1, 3, 7] 81 Am Jur 2d, Witnesses § 481.
[2] 81 Am Jur 2d, Witnesses § 28.
[4] 81 Am Jur 2d, Witnesses § 509.
  5 Am Jur 2d, Appeal and Error § 810.
[5] 5 Am Jur 2d, Appeal and Error § 791.
[6] 81 Am Jur 2d, Witnesses § 662.
[8] 4 Am Jur 2d, Appeal and Error § 267.

5. APPEAL AND ERROR—CRIMINAL LAW—PROSECUTOR'S CLOSING ARGUMENTS—CAUTIONARY INSTRUCTIONS—PRESERVING QUESTION.

A criminal conviction will be reversed on appeal because of a prosecutor's improper closing arguments, in the absence of objection by defense counsel, only where the prosecutor's arguments were so prejudicial that appropriate cautionary instructions would not have cured any prejudice.

6. WITNESSES—CRIMINAL LAW—CROSS-EXAMINATION—DEFENDANT'S BACKGROUND—MISCARRIAGE OF JUSTICE—CREDIBILITY OF WITNESS.

There was no miscarriage of justice resulting from a prosecutor's cross-examination of a defendant regarding the defendant's background where the probing into the defendant's background was brief and was solely for the purpose of examining the defendant's character and credibility and not for the purpose of trying to show the defendant's guilt; the previous life and character of a witness may be inquired into to elicit facts which may aid the jury in determining what credence they will attach to his testimony.

7. CRIMINAL LAW—CONSTITUTIONAL LAW—SILENCE OF DEFENDANT—CROSS-EXAMINATION—PROSECUTION'S CLOSING ARGUMENTS—INCONSISTENT STATEMENTS.

The silence of an accused in the face of questioning may not be used against him at trial, subject to the exception that a defendant's refusal to speak during interrogation is admissible to contradict assertions that a statement was made; cross-examination of a defendant and closing arguments by the prosecution that are directed at inconsistencies between the defendant's earlier statements and the defendant's trial testimony do not constitute an impermissible comment on the defendant's silence during custodial interrogation.

8. APPEAL AND ERROR—WITNESSES—CRIMINAL LAW—MOTIONS—RES GESTAE WITNESSES—INDORSEMENT OF WITNESSES—PRODUCTION OF WITNESSES.

A defendant must bring up the issue of the prosecution's nonindorsement or nonproduction of a res gestae witness in the trial court before such an issue may be considered on appeal.

Appeal from Wayne, Joseph G. Rashid, J. Submitted December 9, 1976, at Detroit. (Docket No. 23191.) Decided April 18, 1977.

Preston S. Baldwin was convicted of assault with intent to do great bodily harm less than murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Research, Training & Appeals, and *David H. Wolock,* Assistant Prosecuting Attorney, for the people.

*Daniel J. Wright,* Assistant State Appellate Defender, for defendant.

Before: BRONSON, P. J., and BASHARA and C. L. HORN,* JJ.

BRONSON, P. J. Defendant was convicted by a jury of assault with intent to do great bodily harm less than murder. MCLA 750.84; MSA 28.279. The charge arose out of an incident occurring in front of the Redmill Bar on Woodward Avenue in Highland Park on September 11, 1974. Defendant admittedly stabbed the victim, a Mr. Rodgers, with a knife. Defendant claimed, however, that he had been defending himself from a knife attack on him by Rodgers.

Defendant received a prison sentence and now appeals raising numerous issues. We find that none require reversal, though four merit discussion.

I.

Defendant first claims error with respect to the trial court's finding that the prosecutor had exercised due diligence in attempting to locate and produce an endorsed res gestae witness. Produc-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tion of the witness was excused and the prosecutor was permitted to introduce the preliminary examination testimony of that witness. See *People v McIntosh,* 389 Mich 82; 204 NW2d 135 (1973), *People v Harringer,* 65 Mich App 649; 237 NW2d 598 (1975).

The witness in question was a Miss Ella Austin, apparently the only known independent witness to the beginnings of the altercation between defendant and Mr. Rodgers. Austin had testified at the preliminary examination and had later been endorsed as a res gestae witness. Her testimony had been somewhat corroborative of what proved to be the defendant's version of the incident, and defense counsel demanded her production when she did not appear on the first day of defendant's trial, a Wednesday.

It is unnecessary to recite all efforts made to locate Miss Austin. Suffice it to say that the efforts made prior to and during the trial were as intensive as in any reported case. When defendant's trial was adjourned for the weekend on Thursday, the second day of trial, his attorney agreed with the trial judge that every possible effort had been made to produce Miss Austin.

As of Thursday evening, the prosecutor had not yet rested, and the police officer in charge of the case, a Detective Quinn, was instructed to continue his efforts to locate Miss Austin over the weekend.

On Monday morning Detective Quinn again testified as to Austin's continued absence from the trial. He stated that she had been in the custody of the police on the previous Friday evening, having been arrested and charged with loitering. Detective Quinn spoke to her and was told that she had been out of town for the previous three or four weeks. Quinn served the subpoena on her and

advised her to show up Monday to testify or she would be in contempt of court. She told him that she would definitely be there as she didn't want any more trouble than she already had.

A bench warrant was issued on Monday for Miss Austin's arrest. Detective Quinn attempted one final time to locate Miss Austin during the noon recess by going to the Redmill Bar and to her house, the only places she was known to frequent, but met with no success. The judge then made a finding of due diligence, held that the witness was unavailable, and ruled that the preliminary examination testimony of Miss Austin could be read to the jury.

As we review defendant's claim that due diligence was not shown by the prosecutor's efforts to produce this witness, we keep in mind that this question is a matter primarily within the discretion of the trial court. A finding of due diligence will be overturned on appeal only where an abuse of discretion is found. *People v Harringer, supra, People v Russell,* 27 Mich App 654; 183 NW2d 845 (1970).

In view of the efforts made by the prosecution to locate and produce Miss Austin, defendant's only serious contention on the question of due diligence relates to Miss Austin's arrest during the trial. Defendant argues that a failure of due diligence is shown by the fact that the witness was in custody at one point during defendant's trial and yet was not produced to testify. Defendant asserts that the witness, upon coming into the custody of the police, should either have been detained in jail or required to put up a bond in order to guarantee her presence at trial pursuant to the material witness statute, MCLA 767.35; MSA 28.975.

That statute permits a court of record to require

a material witness in a criminal case to "enter into a recognizance with such sureties and in such amounts as the court may determine for his appearance at any examination or trial of said cause", or, failing to do so, to be committed to jail. By its own terms, the statute may be invoked only when "there is danger of the loss of testimony of such witness unless he be required to furnish bail or be committed".

Research reveals that this statute has been the subject of little appellate judicial comment. We find no case in which a failure to make use of this procedure in order to detain a res gestae witness has been found to result in a failure of due diligence on the part of the prosecutor.

We do find that bail is properly ordered under this statute only when there is reason to believe that the witness will not be available when her testimony might become necessary. *In re Rankin,* 330 Mich 91; 47 NW2d 28 (1951).[1] Such was not the case here.

When the subpoena was served on this witness while she was in custody, the police had no reason to believe that she would not appear to testify on the following Monday. She had appeared voluntarily at the preliminary examination and appeared to be a friend of the defendant's. She gave a reasonable explanation for her former unavailability for service and said she would appear to testify. There was no reason to believe that she had been intentionally avoiding service or that she had any reason not to want to testify at defendant's trial. Under these circumstances, we cannot hold that the failure of the police to seek to detain her until

---

[1] *See, also, People v Harringer, supra,* p 651. (Bail ordered initially where witness had no permanent place of residence and had received threatening phone calls.)

after her testimony at defendant's trial amounted to a failure of due diligence.

We conclude that the trial court's ruling that the prosecutor had used due diligence in attempting to secure the presence of this witness at trial was not an abuse of discretion.

## II.

Defendant argues that misconduct by the prosecutor at trial, reflected in his cross-examination of defendant and in his closing arguments, was so prejudicial as to have denied defendant a fair trial. No objections were made at trial to the questioning or the arguments which are now the subject of these claims of error. Consequently, this Court will reverse only if the cross-examination resulted in a miscarriage of justice, *People v Stoudemire*, 65 Mich App 664, 668; 238 NW2d 365 (1975), or if the prosecutor's argument was so prejudicial that appropriate cautionary instructions would not have cured any prejudice. *People v Hall*, 396 Mich 650, 655–656; 242 NW2d 377 (1976).

Defendant asserts that reversal of his conviction is required by the Supreme Court decision in *People v Johnson*, 393 Mich 488; 227 NW2d 523 (1975). In that case the defendant's conviction for carrying a concealed weapon was reversed because of prejudicially and reversibly erroneous cross-examination of the defendant and prosecutorial argument. The prosecutor had cross-examined the defendant extensively, and nearly exclusively, on his background and his alleged predisposition to criminal activity. The cross-examination made reference to defendant's employment and education record, his marital status, means for supporting his children, and financial history. The prosecutor then argued to the jury that they could consider in

deciding whether the defendant was guilty of the alleged C. C. W., that he was "a man with two cents in his pocket and he hasn't worked for a long time". *Johnson, supra,* p 496.

The Court held that the argument and the cross-examination leading up to it were erroneous and prejudicial since defendant's poverty and unemployment were probative neither of his guilt or innocence nor of his tendency to lie or tell the truth.

We have carefully reviewed the transcript of defendant's trial and we do not find the abuses which required reversal in *Johnson.*

An examination of some 40 pages of cross-examination of the defendant reveals that only some 3-1/2 pages concerned defendant's background and character. The prosecutor elicited testimony from the defendant indicating that defendant was married and had three children but was separated from his wife, did not know where his wife and children were, and did not contribute to their support. Defendant was employed part-time at a book store, earning up to $50 a week, and yet regularly spent time and money in the Redmill Bar.

In his closing argument, the prosecutor referred to this testimony as being a permissible source of inferences as to defendant's character and credibility. As noted, no objections were made to any of this cross-examination or this argument, nor were cautionary instructions requested.

*Johnson* does not require reversal of this defendant's conviction. The cross-examination into this defendant's background was not nearly as long as that which occurred in *Johnson,* and, more importantly, the purpose for which the examination of the defendant's background was offered, as re-

flected by the prosecutor's argument, was solely for purposes of examining his character and credibility, as opposed to *Johnson* where the purpose was shown to be to prove guilt of the charged offense.

*Johnson* cannot be read as forbidding all cross-examination of a criminal defendant as to his background and character. To the contrary, the Court cited approvingly the general rule as stated in *People v Dye,* 356 Mich 271, 277; 96 NW2d 788 (1959), to the effect that a trial court has broad discretion in regulating this type of inquiry upon cross-examination. In *Dye,* the Court found no abuse of discretion where the prosecutor had cross-examined the defendant about matters pertaining to the defendant's varied marital life, his ownership of property, his professional experience and training, and numerous other related matters.

*People v Dye* reflects the underlying rule governing this aspect of cross-examination, well stated in 1 Gillespie, Michigan Criminal Law and Practice (2d ed), § 401, p 486:

"It is the well-settled rule that the previous life and character of a witness may be inquired into to elicit facts which may aid the jury in determining what credence they will attach to his testimony, yet, it is the duty of courts to keep such examination within reasonable bounds."

See also, *People v Gotshall,* 123 Mich 474; 82 NW 274 (1900).

Defendant's reliance on *People v Hammond,* 394 Mich 627; 232 NW2d 174 (1975), is unfounded. Each of the two opinions in that case was signed by only two justices. Moreover, in that case, the defendant had not taken the stand. The issue presented was whether the prosecutor's cross-ex-

amination of defendant's wife had disparaged the character of the defendant.

We conclude that the trial judge did not abuse his discretion in permitting this cross-examination and that the prosecutor's reference to that testimony as reflecting on defendant's credibility was not erroneous. The inquiry into defendant's background and character was brief, the use made thereof was proper, and defendant was not unduly prejudiced.

Defendant makes numerous other claims with respect to various parts of the prosecutor's closing argument. These claims of prejudicial error need not be discussed in detail. No objection was made to any of the argument and we are not convinced that a cautionary instruction given on request would not have cured any possible prejudice. *People v Hall, supra.* Consequently, we find no reversible error.

## III.

Defendant next claims that cross-examination of defendant by the prosecutor resulted in the violation of the rule set out in *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973), and in *People v Perez,* 66 Mich App 685; 239 NW2d 432 (1976). These cases enunciate the rule that the silence of an accused in the face of questioning may not be used against him at trial, subject to the exception that a defendant's refusal to speak during interrogation is admissible to contradict assertions that a statement was made. *People v Graham,* 386 Mich 452; 192 NW2d 255 (1971).

In the course of the prosecutor's case in chief, a handwritten statement which defendant had given to police officers in the course of in-custody ques-

tioning was introduced into evidence. The officers testified that defendant had first made an oral statement, then had put most of the oral statement in writing. The written statement was short and read as follows:

"The named person pulled a knife on me, chased me around his car and another car. Someone handed me a knife and I continued to run from this man with a knife in his hand until he started to catch up with me. I then turned around and stabbed him in the shoulder (once!) and then I ran back up near the bar where whoever gave me the knife took it back."

Defendant on direct examination admitted making these statements. He also gave his version of the incident for which he was on trial. Previous testimony had indicated that the complainant had been cut in the face as well as in the shoulder. Defendant explained that at one point during the chase, the complainant had backed him up against a wall and lunged at him. Defendant said he had slashed out then to protect himself, cutting the complainant's face.

Previous testimony had also indicated that it was the defendant, not the complainant, who was doing the chasing. Defendant testified that as he was being chased, he sidestepped. The complainant ran on by but kept coming back after him except when he, the defendant, defended himself by running at the complainant. When defendant finally tried to get away, the complainant again chased him, caught him, and slashed at him with his knife. Defendant then stabbed the complainant in the shoulder.

Defendant stated that he then walked back to the bar, returned the knife to its owner, and went

home to change his clothes before returning to the bar.

The prosecutor cross-examined defendant about his trial testimony and about his written statement. Defendant's claim that portions of the cross-examination resulted in a violation of *Bobo* because defendant's silence was used against him is premised on the phrasing of several of the prosecutor's questions, which asked why defendant didn't say to the officers the things he testified to at trial. Defendant argues that such questions amounted to cross-examination as to nonutterances and constituted a violation of defendant's right to remain silent. *Perez, supra,* at 689.

The flaw in defendant's argument is that his written statement and his trial testimony were inconsistent. When defendant was asked by the prosecutor why he hadn't told the police officers about the first stabbing when he had been pinned against a wall or that he had been chasing the complainant at some points during the altercation, the purpose and effect of those questions were not to examine why defendant had not given complete details of the incident to the police. Rather, the questions were designed to explore why defendant had initially told the police officers, in effect, that he had been continuously chased by the complainant until caught, when he was forced to defend himself, but had testified at trial that there had been several breaks in the running, that the stabbings had occurred on two separate occasions and that he had been chasing the complainant at least part of the time.

The prosecutor's closing argument followed this same line of searching for inconsistencies, as he argued: "He [the defendant] never in this statement ever said anything at all similar to what he testified to."

After careful examination of the record, we conclude that the cross-examination and closing argument did not constitute a comment on silence by the defendant during custodial interrogation, but rather were directed at inconsistencies between the statement actually made and the defendant's trial testimony. The cross-examination and argument were thus not improper. *People v Gant,* 55 Mich App 510; 222 NW2d 784 (1974), *Harris v New York,* 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971).

## IV.

Defendant raises another issue concerning an alleged res gestae witness. Defendant asserts that one Danny Moore was an eyewitness to the altercation which resulted in defendant's arrest and conviction, but was not endorsed or produced by the prosecutor. The record, however, contains no mention of any such person, much less any evidence relevant to a determination of such questions as whether he was a res gestae witness, could have been endorsed and produced, or any other relevant question. Defendant's failure to move in the trial court for a new trial pursuant to *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973), precludes appellate review of this claimed error.

Defendant's conviction is affirmed.