PEOPLE v HENDERSON

OPINION OF THE COURT

1. APPEAL AND ERROR—CRIMINAL LAW—CROSS-EXAMINATION—DE-
FENDANT'S FINANCIAL SITUATION—MOTIVE—RELEVANCE—PRO-
BATIVE VALUE.

A trial court commits reversible error in a trial for embezzlement
and arson where it overrules a defense objection and permits a
prosecutor to cross-examine the defendant regarding his poor
financial situation at the time of the offense and where it
instructs the jury that it might consider this evidence as
bearing on the defendant's motive to commit the offense; such
evidence is legally irrelevant, absent extraordinary facts en-
hancing the need for such evidence and thereby its probative
value.

2. WITNESSES—CRIMINAL LAW—CROSS-EXAMINATION—FRAUD—TRUTH.

It was proper intrinsic impeachment of a defense witness in a
trial for embezzlement and arson to extract a confession from
the witness on cross-examination that she had made fraudulent
misrepresentations and omissions in applying for ADC benefits
while under an obligation to tell the truth, where the testi-
mony was necessary to establish the facts underlying her fraud
and did not implicate the defendant, and where the prosecutor
did not characterize the defendant in disparaging terms but
rather stressed to the jury that the reason for the questioning
of the witness was to establish that the witness had not told
the truth in the past.

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial §§ 167–169.
[2] 81 Am Jur 2d, Witnesses §§ 563–568, 591–595.
[3] 50 Am Jur 2d, Larceny § 150.
75 Am Jur 2d, Trial § 721.
[4] 75 Am Jur 2d, Trial §§ 290–293.
Counsel's reference in criminal case to wealth, poverty, or financial
status of defendant or victim as ground for mistrial, new trial, or
reversal. 36 ALR3d 839.

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY M. J. KELLY, P. J.

3. CRIMINAL LAW—EVIDENCE—THEFT OFFENSES—MOTIVE—DEFEND-
   ANT'S FINANCIAL SITUATION.

   *A defendant's need for money may be shown in order to establish
   a motive for a theft offense; therefore, where a theft offense is
   involved, the prosecutor may prove a motive by showing that
   the defendant, whether poor or relatively affluent, was acutely
   short of money immediately before the offense occurred.*

4. APPEAL AND ERROR—CRIMINAL LAW—CROSS-EXAMINATION—DE-
   FENDANT'S FINANCIAL SITUATION—MOTIVE—LENGTH OF IN-
   QUIRY.

   *A trial court did not abuse its discretion in a trial for embezzle-
   ment and arson where it overruled a defense objection and
   permitted a prosecutor to cross-examine the defendant regard-
   ing his poor financial situation at the time of the offense and
   instructed the jury that it might consider this evidence as
   bearing on the defendant's motive where the inquiry into the
   defendant's financial situation was brief or minimal.*

Appeal from Kent, George R. Cook, J. Submitted
June 13, 1977, at Grand Rapids. (Docket No.
29380.) Decided January 4, 1978. Leave to appeal
applied for.

Johnny M. Henderson was convicted of embezz-
lement and arson. Defendant appeals. Reversed
and remanded.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *David H. Sawyer,*
Prosecuting Attorney, and *Donald A. Johnston III,*
Chief Appellate Attorney, for the people.

*Loeks, Buth, Wood & Weidaw,* for defendant.

Before: M. J. KELLY, P. J., and M. F. CAVANAGH
and J. R. ROOD,* JJ.

M. F. CAVANAGH, J. A jury convicted Johnny

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Mack Henderson of embezzlement and arson. MCLA 750.73; MSA 28.268 and MCLA 750.174; MSA 28.371. His appeal by right presents two allegations of error for our consideration.

## I

Defendant first contends that the court committed reversible error when, in overruling a defense objection, it permitted the prosecutor to cross-examine defendant regarding his poor financial situation at the time of the offense, and instructed the jury that it might consider this evidence as bearing on defendant's motive.[1]

---

1

"Q How was your financial situation back in August of 1975?

"A Not bad.

"Q How about not good?

"A Not bad.

"Q Didn't Consumers Power on July 28th, '75 turn off your power?

"A Yes, they did.

"Q Okay. Hadn't they turned it off once before in April?

"A They did not.

"Q They did not discontinue the service on April 4, 1975?

"MR. HOWARD [Defense counsel]: Your Honor, I am going to object to this line of questioning. I think it is improper under *People v Johnson*, 393 Mich, 428.

"THE COURT: I am familiar with that case.

"MR. ZERIAL [Prosecuting attorney]: We are going to the intent. I think it is obvious as to what his financial condition is.

"MR. HOWARD: The man's poverty or non-poverty is not in question in this trial.

"MR. ZERIAL: That case I am familiar with, and that was a CCW case.

"THE COURT: No, that was the television case. That was that case where the television was on the back seat?

"MR. ZERIAL: Right.

"MR. HOWARD: No, your Honor. It is a CCW case, and the Court says—

"MR. ZERIAL: Just like I said.

"MR. HOWARD: And the Court said—

"THE COURT: Well, I am familiar with either with that case or one like it.

"MR. HOWARD: I really don't see the relevance either.

"THE COURT: Are you trying to show motive or what?

Defense counsel's objection at trial was based, as is his argument here, on *People v Johnson,* 393 Mich 488, 496–499; 227 NW2d 523 (1975). *Johnson* held that, in a prosecution for carrying a concealed weapon, it was reversible error for the prosecutor to question the defendant regarding his unemployment and argue to the jury that it could consider defendant's unemployment and poverty in determining whether he committed the charged offense. Justice WILLIAMS, for the majority, wrote:

"Obviously neither poverty nor unemployment is an element of the crime of carrying a concealed weapon. Either a poor man or a rich man may be either guilty or innocent of carrying a concealed weapon. Likewise whether a man is employed or unemployed is no proof or partial proof of carrying a concealed weapon. Neither does defendant's poverty or unemployment affect his testimonial credibility in this case. In short, these things neither in law nor in logic are evidence of defendant's guilt or innocence or his tendency to lie or tell the truth. To assert otherwise is to argue a *non sequitur.*

"Consequently this argument and advice to the jury by the prosecutor is erroneous and patently prejudicial. And in this connection so is the cross-examination

---

"MR. ZERIAL: Yes, that case is entirely different.

"THE COURT: Well, let me say this to the jury. We are getting some testimony here about who is married and who isn't married, and who has kids legitimately and whose aren't, and who is having the power shut off, and who isn't. Now, those things are not in issue. I mean, the charge here is embezzlement of money, and the charge here is arson. Now, if the prosecutor is bringing this out to show motive, I will permit it, but only for that purpose. We are not charging anybody here with—I'd like to say sometimes this is a court of chancery not a court of chastity. So only for that purpose, and I would hope that you would restrict it as much as you can, Mr. Prosecutor.

"MR. HOWARD: Your Honor, I would ask that the record reflect my objection.

"THE COURT: What?

"MR. HOWARD: I would ask that the record reflect my objection.

"THE COURT: Yes, it will, and you may have your exception."

leading up to this argument and advice." 393 Mich at
496–497. (Footnote omitted.)

*Johnson* has provoked a number of recent deci-
sions in which different panels of this Court have
struggled with the question of when cross-exami-
nation regarding the defendant's financial circum-
stances will constitute reversible error. See *People
v Ronald Green (On Remand),* 79 Mich App 186; 261
NW2d 253 (1977), and cases therein cited. Reversal
in those cases has been held to turn on the num-
ber of such questions *(People v John Moore,* 78
Mich App 150; 259 NW2d 403 [1977], *People v
Jackson,* 77 Mich App 392; 258 NW2d 89 [1977],
*People v LaForte,* 75 Mich App 582; 256 NW2d 44
[1977], *People v Baldwin,* 74 Mich App 700; 254
NW2d 619 [1977]), whether the defendant first
raised the subject on direct examination or by a
volunteered, unresponsive statement on cross-ex-
amination *(People v John Moore, supra, People v
Thomas Jones,* 73 Mich App 107; 251 NW2d 264
[1976]), whether the matter was emphasized as
proving the defendant's motive *(People v John
Moore, supra, People v LaForte, supra, People v
Baldwin, supra),* whether the cross-examination
probed into a number of other areas which were
regarded as prejudicial and irrelevant *(People v
LaForte, supra, People v Osborne,* 75 Mich App
600; 256 NW2d 45 [1977], *People v Ronald Green,*
74 Mich App 601; 254 NW2d 788 [1977]), and, of
course, whether defense counsel objected to the
questioning *(People v John Moore, supra, People v
Jackson, supra, People v LaForte, supra, People v
Baldwin, supra, People v Thomas Jones, supra).*

As the foregoing citations demonstrate, there is
broad agreement among the panels of this Court
as to what facts militate for or against reversal
where such cross-examination occurs. However,

there is conflict over the basic issue: when is this cross-examination proper?

In appeals from convictions for delivery of heroin *(People v John Moore, supra)*, breaking and entering with intent to commit larceny *(People v LaForte, supra)*, and first-degree murder, under circumstances suggesting a killing for hire *(People v Ronald Green, supra)*, such evidence has been said to be irrelevant and inadmissible to establish the defendant's motive.

Although they do not explicitly state the theoretical basis of their conclusion, these authorities seem to put their decisions on the ground of legal, as opposed to logical, relevance. This may be inferred from their concern with the prejudicial effect of permitting this cross-examination,[2] as opposed to its lack of a logical connection to a matter in issue.

However, *Johnson* involved a prosecution for carrying a concealed weapon. In *People v Jackson, supra,* where the charged offense was armed robbery, the panel interpreted *Johnson's* holding as limited to logical relevance, *i.e.,* a holding that the cross-examination there was impermissible solely because there is no logical connection between the defendant's want of money and the crime of carrying a concealed weapon. The *Jackson* Court thus concluded, in dicta, that the evidence would be relevant and admissible in a trial for a theft offense.

The Court in *People v Thomas Jones, supra,* apparently took a similar view of *Johnson,* finding like inquiries "arguably relevant" in a trial for armed robbery.

---

[2] "[Enactment of a] law against poverty," *People v LaForte, supra,* 75 Mich App at 584; "[creation of] a two-tiered standard of justice * * * demolish[ing] *pro tanto* the presumption of innocence." *People v Ronald Green, supra,* 74 Mich App at 606.

In the case before us, defense counsel's timely and specific objection, and the court's instruction to the jury that they could consider the evidence as tending to show defendant's motive, narrow our inquiry to the question dividing the previously cited authorities: in a trial for embezzlement, an offense presumably motivated by a desire for pecuniary gain, is it reversible error to permit the prosecutor, over objection by defense counsel, to cross-examine the defendant regarding his poor financial situation, for the purpose of establishing the defendant's motive to commit the offense?

To permit routine proof of impecuniousness to establish the motive for a theft offense is unjustifiable unless we assume that wealth exerts a greater attraction on the poor than on the rich.[3]

---

[3] We cannot stress too strongly that our concern here is only with proof of financial need as supplying the motive for a theft offense. Discussions of this issue suffer a tendency to restate it as something like the following: whether impecuniosity may be proved to establish the likelihood that someone would steal. There is a subtle but important shift of emphasis; the inquiry becomes whether someone with lower income is more likely to steal than someone whose income is greater.

It must be recognized that there are two different questions: whether the strength of one's resistance to a specific means of gain (theft), is inversely proportional to one's financial need (or social class), and whether the attraction which one feels to monetary gain is directly proportional to that need.

It is the latter inquiry which occupies us here.

As to the former, there may be a statistically verifiable answer. Perhaps the socialization of the more deprived leaves them with less regard for property rights and less resistance to the impulse to gain by violating those rights. We presume that the relationships between social class, financial need, and probability of theft as a response are very complex. Whatever those relationships may be, neither argument nor evidence has been presented to this Court in an effort to justify the cross-examination conducted herein on their basis. We offer no opinion on this question.

We also emphasize that the issue here is not the propriety of using "bookkeeping evidence", which tends to establish that defendant came into a sum of money, the source of which is inadequately explained, at about the time of the commission of a theft offense. Such evidence might properly be received as probative of defendant's possession of the fruits of the crime, as opposed to defendant's motive for committing a crime.

But though the poor may be moved by their need, those with greater income may respond to the pangs of insatiable avarice. We reject the assumption that "easy money" is more alluring to the poor than to the prosperous.

It may be argued that we should permit proof of the origins of each person's desire for money, whether it be want, or well-fed cupidity. However, greed would not readily be proved. Poverty would. Hence we cannot, consistent with equal treatment to the poor and the well-to-do, indulge ourselves in the fiction that the motive of each may be shown at trial. If we attempt to permit this proof on a routine basis it will, without doubt, further disadvantage those least able to defend themselves in the courts.

This, the rule's cost, is unwarranted by any resulting benefit. The motive for a theft offense seldom requires explanation. The motive is so pervasive that its proving will establish little more than the defendant's typicality; such proof increases but little the likelihood that this defendant is guilty of the charged offense. If poor and rich share a common and obvious motive, then why prove poverty?

In summary, we regard the probative value of such evidence as very low, because the desire for more money is not confined to those in need. We also believe that the admission of such evidence, based upon a contrary assumption articulated in prosecutors' summations, would inhibit realization of a highly valued judicial goal, equality before the courts. Therefore, absent extraordinary facts enhancing the need for such evidence, and thereby its probative value,[4] we hold it to be legally irrele-

---

[4] To illustrate the sort of circumstances we have in mind, we offer the following example. Suppose an apparently well-to-do defendant

vant. See *People v DerMartzex,* 390 Mich 410, 415; 213 NW2d 97, 100 (1973). Because there were no such facts in the present case, we hold that the trial court erred by overruling defendant's objection and instructing the jury that they might consider this evidence as tending to show defendant's motive.

II

Defendant also contends that reversible error was committed by the prosecutor during cross-examination of the defense witness Dorothy Starrs. The prosecutor elicited from Ms. Starrs her admissions that she had made a number of false statements in applications for ADC benefits.

Defendant, relying on the rationale of the plurality opinion in *People v Hammond,* 394 Mich 627; 232 NW2d 174 (1975), argues that this cross-examination reversibly prejudiced his trial by implicating him in the unrelated offense of welfare fraud.

We disagree. It was proper intrinsic impeachment to extract from Ms. Starrs her confession that she had made fraudulent misrepresentations and omissions while under an obligation to tell the truth. See MCLA 400.60; MSA 16.460. As to defendant, Ms. Starrs testified that he was the father of her two children, that he was living with her, and that he was paying the rent. While this testimony was necessary to establish the facts underlying Ms. Starrs' fraud, it did not implicate defendant in this crime. See *People v Killingsworth,* 80

took the stand and testified that his financial well-being put him above any motive for further gain. We would not thereafter look favorably upon a defense objection to the prosecutor's attempt to impeach such testimony. Cf. *People v Kolowich,* 262 Mich 137, 146–147; 247 NW 133, 136 (1933).

Mich App 45; 263 NW2d 278 (1977). Nor did the prosecutor, in his closing argument, characterize defendant as a "lazy non-provider", or in similarly disparaging terms, as was the case in *Hammond, supra.* On the contrary, the prosecutor stressed to the jury that "[t]he reason I went into the details that I did for his girlfriend was because we wanted to establish that she has not told the truth in the past".

On these facts, we find no reversible error in this cross-examination.

For the reasons expressed in Issue I, this case is reversed and remanded.

J. R. Rood, J., concurred.

M. J. Kelly, P. J. *(concurring in part, dissenting in part).* I disagree with the majority holding on Issue I.

Another panel of this Court has recently held in *People v Jackson,* 77 Mich App 392, 400–401; 258 NW2d 89 (1977):

"Absent an express prohibition by the Supreme Court, we would hold that, with some limitations, a defendant's need for money may be shown in order to establish a motive for a theft offense. We do not believe that *People v Johnson,* [393 Mich 488; 227 NW2d 523 (1975)], prohibits that holding. We are opposed to a general rule or rationale that poor people are more likely to be criminals or that they are more likely to commit crimes which involve thefts of money. But we believe that, where a theft offense is involved, the prosecutor may prove a motive by showing that the defendant—whether poor or relatively affluent—was acutely short of money immediately before the offense occurred. Given such a rule, we would hold that the prosecutor's questions in the present case were proper even if the defendant had properly preserved this question for appeal by making a timely objection."

The instant case presents us with a defendant convicted of the theft offense of embezzlement.

I cannot agree that the trial court abused its discretion by overruling defendant's objection in instructing the jury that it may consider the examination on defendant's financial status to show motive only. Again, as in *Jackson,* we are confronted with a brief inquiry into defendant's financial situation, unlike the lengthy discourse had during the cross-examination of defendant relating to his financial status in *People v Johnson,* 393 Mich 488, 493, nl; 227 NW2d 523 (1975), *People v Jackson, supra,* at 401, *People v Baldwin,* 74 Mich App 700, 707–708; 254 NW2d 619 (1977).

The record leads me to believe that the jury did not assess its finding on the minimal discourse quoted in footnote 1 of the majority's opinion and I find any error in allowing such cross-examination harmless beyond a reasonable doubt because there was no manifest injustice here.

I would affirm.