PEOPLE v LEVERETTE

Docket No. 77-2364. Submitted April 12, 1978, at Detroit.—Decided
    June 20, 1978. Leave to appeal applied for.

Karl Leverette was convicted of possession of heroin, Recorder's
    Court of Detroit, Susan D. Borman, J. Defendant appeals. *Held:*
    The defendant's conviction is reversed because the prosecu-
    tor, in his closing argument, impermissibly referred to the
    defendant's unemployment thereby seeking to have the jury
    draw an inference that the defendant's money must have come
    from criminal activities.

    Reversed and remanded.

    BASHARA, J., dissented. He would hold (1) that the description
    in the search warrant of items to be seized, which concluded
    with the statement "to include items to prove residency" did
    not make the warrant general in nature, (2) the trial court's
    instruction that the jury could infer that an unproduced res
    gestae witness's testimony would be unfavorable to the prosecu-
    tion was an adequate remedy for the prosecution's failure to
    produce the witness, (3) the admission into evidence of a
    photograph of the defendant holding a card on which was an
    unidentified powdery substance was not an abuse of discretion
    where it was admitted on cross-examination of the defendant,

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 75 Am Jur 2d, Trial §§ 293–295.
    Counsel's reference in criminal case to wealth, poverty, or financial
        status of defendant or victim as ground for mistrial, new trial, or
        reversal. 36 ALR3d 839.
[3] 68 Am Jur 2d, Searches and Seizures § 82.
[4] 75 Am Jur 2d, Trial § 771.
[5] 29 Am Jur 2d, Evidence §§ 785, 788.
    Authentication or verification of photograph as basis for introduc-
        tion in evidence. 9 ALR2d 899.
[6] 21 Am Jur 2d, Criminal Law § 253.
    Waiver or loss of accused's right to speedy trial. 57 ALR2d 302.
[7] 75 Am Jur 2d, Trial §§ 290, 291.
    Counsel's reference in criminal case to wealth, poverty or financial
        status of defendant or victim as ground for mistrial, new trial, or
        reversal. 36 ALR3d 839.

and not as a part of the prosecution's case in chief, and the defendant, in his testimony, had identified the time and place of the photograph and had identified the substance, (4) the defendant was not denied his right to a speedy trial, despite a 23 month delay between arrest and trial, where the defendant had failed to appear when the docket conference was called and when the case was first called for trial, and (5) the prosecutor's brief reference in closing argument to the defendant's unemployment was not prejudicial error where the defendant had stated on direct examination that he was unemployed and the statement by the prosecutor was never completed because of the defendant's objection. He would affirm the conviction.

OPINION OF THE COURT

1. CRIMINAL LAW—PROSECUTORS—CLOSING ARGUMENT—POVERTY—
   MOTIVE—PRESUMPTION OF INNOCENCE.

   There is no law against poverty and our system of justice will not countenance a prosecutor's *modus operandi* which effectively enacts such a law; once it is accepted that impoverished persons have a greater motive to commit crimes than the well-to-do, a two-tiered system of justice is established and the presumption of innocence is demolished *pro tanto.*

2. CRIMINAL LAW—PROSECUTORS—CLOSING ARGUMENT—DEFENDANT'S
   UNEMPLOYMENT—INSTRUCTIONS TO JURY—PREJUDICE.

   A defendant's conviction should be reversed where a prosecutor, in his closing arguments, inferred that because a defendant was unemployed but yet was able to participate in activities requiring money, the money needed must have come from criminal activities; the defendant's failure to request a curative instruction in response to the improper remarks does not bar the reversal because a curative instruction would not have overcome the prejudicial effect of the argument.

DISSENT BY BASHARA, J.

3. SEARCHES AND SEIZURES—CONSTITUTIONAL LAW—SEARCH WAR-
   RANTS—SPECIFICITY OF WARRANT—ITEMS TO PROVE RESIDENCY.

   *The phrase "to include items to prove residency" in a search warrant to describe items to be seized in a drug raid did not make the warrant violative of the United States Constitution by making the warrant general in nature (US Const, Ams IV, XIV).*

4. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—PRODUCTION
   OF WITNESSES—INSTRUCTIONS TO JURY—INFERENCES.

   An instruction to a jury that the jury may infer that an unpro-
   duced witness's testimony would be unfavorable to the prosecu-
   tion is an adequate remedy where a res gestae witness has not
   been produced by the prosecution.

5. CRIMINAL LAW—EVIDENCE—PHOTOGRAPHS—ADMISSIBILITY OF EVI-
   DENCE—RELEVANCE—HEROIN—POSSESSION—INTENT.

   Allowing a prosecutor during the cross-examination of a defend-
   ant to use a photograph of the defendant holding a container
   and a card upon which was a powdery substance and admitting
   it in as evidence at the defendant's trial on a charge of
   possession of heroin was not an abuse of discretion where the
   defendant, in his testimony, had identified the time and place
   at which the photograph was taken and also had stated that
   the substance shown in the picture was lactose and that he
   prepared the lactose for mixing with heroin, in preparation for
   its sale, and where the defendant's intent to possess the heroin
   found in his apartment was a material, disputed issue at trial,
   making evidence that he was selling heroin relevant to that
   intent and therefore admissible.

6. CRIMINAL LAW—CONSTITUTIONAL LAW—SPEEDY TRIAL.

   A defendant's allegation that he was denied his right to a speedy
   trial because 23 months elapsed between the date of arrest and
   the date of trial is without merit where the record reveals that
   the defendant failed to appear when the docket conference was
   called and when the case was first called for trial, making it
   necessary on both occasions to issue a capias for defendant's
   arrest.

7. CRIMINAL LAW—PROSECUTORS—CLOSING ARGUMENT—DEFENDANT'S
   UNEMPLOYMENT.

   A prosecutor's brief reference in closing argument to a defend-
   ant's unemployment was not prejudicial error where the de-
   fendant had stated on direct examination that he was unem-
   ployed and the statement by the prosecutor was never com-
   pleted because of the defendant's objection.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Edward R. Wilson,* Principal
Attorney, Appeals, and *Rita Chastang,* Assistant
Prosecuting Attorney, for the people.

*Kenneth Lerner,* for defendant on appeal.

Before: T. M. BURNS, P. J., and N. J. KAUFMAN and BASHARA, JJ.

N. J. KAUFMAN, J. The facts are well-stated in the dissenting opinion. We concur in the results reached by the dissenting opinion except as to that portion dealing with the prosecutor's remarks in closing argument. During closing argument, the following colloquy occurred:

"*[The prosecutor]:* You heard the Defendant wasn't working, but yet he was going to the track. * * * It's a reasonable inference that the money that he was living on was coming from the sale * * *
"MR. RUTLEDGE *[Defense Counsel]:* I am going to object to that your Honor. Certainly not a reasonable inference can be drawn from the facts reduced *[sic]* in the case.
"THE COURT: I didn't hear you.
"MR. RUTLEDGE: I am objecting to the Prosecutor's statement that a reasonable inference is, that the money that Mr. Leverette lived on was garnered from the drug trade or something.
"THE COURT: I'll sustain the objection."

The inference that the prosecutor was seeking the jury to draw was that because defendant was unemployed, and yet was able to participate in activities requiring money, the money needed must have come from criminal activities. Significantly, had defendant been employed, the prosecutor would not have been able to posit the disputed inference.

"To permit routine proof of impecuniousness to establish the motive for a theft offense is unjustifiable unless we assume that wealth exerts a greater attraction on the poor than on the rich. But although the poor may

be moved by their need, those with greater income may respond to the pangs of insatiable avarice. We reject the assumption that 'easy money' is more alluring to the poor than to the prosperous." *People v Henderson,* 80 Mich App 447, 453–454; 264 NW2d 22 (1978). (Footnote omitted.)

The legitimacy of legal systems in democratic countries is founded on the consent of the governed, consent which emanates from an intuitive belief that, as a whole, everyone is equal before the law. There appears to be a growing conviction among the underprivileged that, in fact, they are not equally treated. That impression, whether or not justified, strikes at the very foundation of our legal system. Judicial doctrines which provide concrete examples for that viewpoint should be scrutinized with the gravest distrust.

As noted in *People v Henderson, supra* at 454:

"It may be argued that we should permit proof of the origins of each person's desire for money, whether it be want, or well-fed cupidity. However, greed would not readily be proved. Poverty would. Hence we cannot, consistent with equal treatment to the poor and the well-to-do, indulge ourselves in the fiction that the motive of each may be shown at trial. If we attempt to permit this proof on a routine basis it will, without doubt, further disadvantage those least able to defend themselves in the courts.

"This, the rule's cost, is unwarranted by any resulting benefit. The motive for a theft offense seldom requires explanation. The motive is so pervasive that its proving will establish little more than the defendant's typicality; such proof increases but little the likelihood that this defendant is guilty of the charged offense. If poor and rich share a common and obvious motive, then why prove poverty?"

The consequences of such prosecutorial argument have been eloquently stated by this Court:

"The prosecutor should be reminded, however, that there is no law against poverty, and that our system of justice will not countenance a *modus operandi* which effectively enacts such a law." *People v LaForte,* 75 Mich App 582, 584; 256 NW2d 44 (1977), *lv den,* 402 Mich 853 (1978).

"Once we accept the notion that impoverished persons have a greater motive to * * * [commit crimes] than the well-to-do we effectively establish a two-tiered standard of justice and demolish *pro tanto* the presumption of innocence." *People v Ronald Green,* 74 Mich App 601, 606; 254 NW2d 788 (1977).

In defense of the prosecutor's remark in this case, it may be noted that it was short and not repeated after the trial court sustained defense counsel's objection. However, to do other than reverse defendant's conviction, would countenance a "one bite of the apple" rule for prosecutors, as long as it was a small bite. It cannot be seriously disputed that there are circumstances in which a short concentrated attack is more prejudicially devastating than a long, rambling exposition. Judge (now Justice) LEVIN expressed it best in *People v Farrar,* 36 Mich App 294, 299–300; 193 NW2d 363 (1971):

"Unless we enforce the rules we encourage their violation and add to the burden of the appellate courts. Our frequent strictures against this kind of argument mean little unless we are prepared to reverse and require a new trial. A prosecutor who crosses a clearly defined line, and a trial judge who makes * * * [an inadequate] effort to stop him, have only themselves, not the appellate courts, to blame if a judgment of conviction is reversed and the case must be retried because of improper argument." (Footnote omitted.)

It may be further acknowledged that no request for a curative instruction was made. Nevertheless, we fail to see that a curative instruction would help. As the United States Supreme Court noted

in *Bruton v United States,* 391 US 123, 129; 88 S
Ct 1620; 20 L Ed 2d 476 (1968), quoting from the
dissenting opinion in *Delli Paoli v United States,*
352 US 232; 77 S Ct 294; 1 L Ed 2d 278 (1957), as
well as from *Krulewitch v United States,* 336 US
440; 69 S Ct 716; 93 L Ed 790 (1949):

" 'The fact of the matter is that too often such admo-
nition against misuse is intrinsically ineffective in that
the effect of such a nonadmissible declaration cannot be
wiped from the brains of the jurors. The admonition
therefore becomes a futile collocation of words and fails
of its purpose as a legal protection to defendants
against whom such a declaration should not tell.' 352
US at 247. The dissent went on to say, as quoted in the
cited note in *Jackson [v Denno,* 378 US 368; 84 S Ct
1774; 12 L Ed 2d 908 (1964)], 'The government should
not have the windfall of having the jury be influenced
by evidence against a defendant which, as a matter of
law, they should not consider but which they cannot
put out of their minds.' *Id.* at 248. To the same effect,
and also cited in the *Jackson* note, is the statement of
Mr. Justice Jackson in his concurring opinion in *Kru-
lewitch v United States,* 336 US 440, 453: 'The naive
assumption that prejudicial effects can be overcome by
instructions to the jury * * * all practicing lawyers
know to be unmitigated fiction.' " (Footnote omitted.)

Without suggesting an improper motive on the
part of the prosecutor, defendant's conviction is
reversed and this case is remanded for a new trial
because the remarks set forth above are "offensive
to the maintenance of a sound judicial system".
*People v Sherman Hall,* 77 Mich App 456, 461; 258
NW2d 517 (1977), citing *People v Swan,* 56 Mich
App 22, 31–32; 223 NW2d 346 (1974), *lv den,* 395
Mich 810 (1975).

T. M. Burns, P. J., concurred.

BASHARA, J. *(dissenting)*. Defendant appeals his conviction by a jury for possession of heroin, MCL 335.341; MSA 18.1070(41). He was arrested when police, pursuant to a search warrant, entered an apartment to execute the warrant.

As a result of the search, the police seized a quantity of powder, which later analysis disclosed as containing heroin, two guns, a photograph, a key, and other items allegedly used to prepare heroin for illicit sale. A pretrial motion to suppress the evidence and quash the information was made by defendant and denied.

Defendant contends that the warrant lacked a sufficiently particular description of the items to be seized, making the search violative of the fourth and fourteenth amendments to the United States Constitution. This claim stems from the concluding phrase in the description, which stated, "to include items to prove residency".

We do not find that the foregoing phrase made the warrant general in nature, remitting the extent of the search to the discretion of the executing officers. Rather, the officers were restrained in the scope of their search to locating and seizing such items as rent receipts, a lease or rental agreement, mail envelopes showing the address of the premises and name of the addressee. These articles were necessary to establish the identity of the person maintaining possession of the contraband. Consequently, we conclude that the warrant did not authorize a general, exploratory examination of the defendant's personal belongings so as to come within the proscription of the fourth amendment. See generally *Andresen v Maryland,* 427 US 463; 96 S Ct 2737; 49 L Ed 2d 627 (1976), *Coolidge v New Hampshire,* 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971).

The other occupant of the apartment in which defendant was found was not indorsed or produced as a witness at trial by the prosecution. The trial court held that the witness was a *res gestae* witness and that the prosecution did not exercise due diligence in making the witness available at trial. At the conclusion of the case the trial court included in its jury instructions an instruction that the jury may infer that the witness's testimony would be unfavorable to the prosecution. Defendant claims that this was an inadequate remedy for the loss of such valuable defense testimony.

The instruction given was substantially identical to that suggested in the Michigan Criminal Jury Instructions, modified to reflect a finding by the trial court as to the lack of due diligence. See CJI 5:2:14, *People v Stephen,* 31 Mich App 604; 188 NW2d 105 (1971), *lv den,* 384 Mich 843 (1971). That instruction adequately protects the defendant from false accusation by permitting the jury to surmise that the witness's testimony would have been favorable to the defendant. See *People v Bennett,* 68 Mich App 446; 243 NW2d 15 (1976).

The photograph seized incident to the search depicted defendant holding a container and a card upon which was a powdery substance. It was held by the trial court to be inadmissible in the prosecutor's case in chief, because the nature of the items shown in the picture could not be established. When the defendant testified, the prosecutor was allowed to use the photograph in his cross-examination and have it admitted into evidence. Defendant maintains that this was reversible error, since it permitted the prosecutor to adduce evidence that defendant was participating in the sale of narcotics, a crime other than that for which he was being tried.

In defendant's testimony, he identified the time and place where the photograph was taken. He also stated that the substance shown in the picture was lactose, and that he prepared the lactose for mixing with heroin, prefatory to its sale.

We conclude that the trial court did not abuse its discretion in admitting the photograph into evidence. See *People v Olsson,* 56 Mich App 500; 224 NW2d 691 (1974), *lv denied,* 394 Mich 772 (1975), *People v Midgyett,* 49 Mich App 663; 212 NW2d 754 (1973). Further, since defendant's intent to possess the heroin found in the apartment was a material, disputed issue at trial, evidence that he was selling heroin was relevant to that intent and, therefore, admissible. MCL 768.27; MSA 28.1050, *People v Peck,* 39 Mich App 150; 197 NW2d 346 (1972).

Defendant also contends that he was denied his sixth amendment right to a speedy trial. The record discloses that approximately 23 months elapsed between the date of arrest and date of trial. However, the record also indicates that the defendant failed to appear when the docket conference was called and when the case was first called for trial. On both occasions it was necessary to issue a capias for defendant's arrest. Under these circumstances, we conclude that the defendant's claim is without merit. *Cf. People v Chism,* 390 Mich 104; 211 NW2d 193 (1973).

At trial, the prosecutor was permitted to use defendant's two prior larceny convictions to impeach his credibility. The contention of defendant that this constituted reversible error is belied by reference to the record and the case of *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974).

Defendant further maintains that the prosecutor, in his closing argument, impermissibly refer-

red to defendant's unemployment to establish guilt. Although defendant's objections to the statements were sustained and were interjected before the prosecutor could complete the statements, defendant urges that reversible error resulted because the trial court failed to give a cautionary instruction.

On direct examination, defendant stated that he was unemployed. However, in his cross examination testimony defendant admitted that by processing lactose he assisted in the preparation of heroin for subsequent sale.

Aside from the fact that the prosecutor was precluded by defendant's objection from completing the statements concerning defendant's connection with drug sales, I find that the tenor of the prosecutor's argument was not such as to ascribe to defendant a proclivity for crime because of his unemployment. Compare *People v Johnson,* 393 Mich 488; 227 NW2d 523 (1975). Rather, the prosecutor was arguing in summation on the basis of testimony elicited from the defendant. Accordingly, I perceive no prejudicial error under the circumstances presented.

I would affirm defendant's conviction.