PEOPLE v ANDREWS

Docket No. 77-4899. Submitted October 12, 1978, at Detroit.—Decided January 16, 1979.

Johnny M. Andrews was convicted of first-degree murder in connection with the robbery of a restaurant in the Recorder's Court for the City of Detroit, Joseph A. Gillis, J. Defendant appeals alleging error in the admission of prosecutorial references to the defendant's unemployment or poverty in order to show a motive to commit the offense. *Held:*

1. The trial court committed reversible error in overruling the defendant's objections to the admission of evidence regarding the defendant's poverty or unemployment where the evidence was offered to show a motive to commit the offense. Such evidence is legally irrelevant to the issue of guilt or innocence.

2. The Court of Appeals will not allow the admission of evidence of a defendant's poor financial situation to show a motive for an offense.

Reversed and remanded.

D. E. HOLBROOK, JR., J., concurred in the result only.

1. CRIMINAL LAW — HOMICIDE — FIRST-DEGREE MURDER — WITNESSES — APPEAL AND ERROR — DEFENDANT'S FINANCIAL SITUATION — MOTIVE FOR OFFENSE — RELEVANCE.

A trial court commits reversible error in a trial for first-degree murder where it overrules a defense objection and permits a prosecutor to question a defense witness regarding the unemployment or poor financial situation of the defendant or the witness in order to show the defendant's motive to commit the offense; such evidence is legally irrelevant to the issue of guilt or innocence.

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 624.
   40 Am Jur 2d, Homicide § 560.
   81 Am Jur 2d, Witnesses §§ 432, 433, 532.
[2] 21 Am Jur 2d, Criminal Law § 85.
   29 Am Jur 2d, Evidence §§ 249, 251-257.

2. CRIMINAL LAW — EVIDENCE — MOTIVE FOR OFFENSE — PRESUMP-
   TION OF INNOCENCE.

   The Court of Appeals refuses to allow evidence of a defendant's
   poverty or unemployment to show a motive for an offense; to do
   so would effectively establish a two-tiered standard of justice
   and demolish *pro tanto* the presumption of innocence.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Michael R. Mueller,* Director, Prosecutor's Repeat Offenders Bureau, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people.

*Leonard Townsend,* for defendant.

Before: M. F. CAVANAGH, P.J., and D. E. HOL-BROOK, JR. and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. On November 14, 1977, defendant was jury-convicted of first-degree murder, MCL 750.316; MSA 28.548, in connection with the January 30, 1977, robbery of a restaurant in which an employee was shot and killed. Defendant was sentenced to life imprisonment and appeals as of right.

At trial the defense was alibi. Defendant did not take the stand, but his girlfriend, Carolyn Ferguson, testified that defendant was with her in Cleveland at the time the crime was committed. Then on the cross-examination of Ferguson, the following occurred:

"Q *[By the prosecutor]* Can you tell me where Mr. Andrews was working back in January?

"MR. ROTH: That is objected to. That is strictly hearsay. How is she going to know?

"THE COURT: Well, if she knows.

"A I don't know where he was working.

"Q I'm sorry?

"A I don't know nothing about him working back in January.

"Q Does that mean he wasn't working and you don't know —

"A He wasn't. He was with me all the while.

"Q Oh, he wasn't working then?

"A No.

"Q Were you employed back in January?

"A No.

"Q Was Mr. Andrews employed in Cleveland after he supposedly got there?

"A No.

"Q Can you tell me how you were supporting yourself then?

"MR. ROTH: I object to that. That has no bearing on this case.

"MR. WOUCZYNA: My response is that it does, your Honor. It provides a motive.

"THE COURT: I will overrule the objection.

"Q How were you supporting yourself back then, Ma'am?

"A Well, I was getting welfare assistance; but I wasn't in no hurt for no money, you know, I was making it.

"Q How were you making it?

"A Like my mother and them, if there was really anything I needed, you know, I could always go to my people for it. It wasn't no big thing.

"Q How was Mr. Andrews supporting himself?

"A When we were together, what was mine was his."

In closing argument, the prosecutor again referred to unemployment:

"I think it's interesting and somewhat helpful because it surely could provide a motive for Mr. Andrews' actions that neither Carolyn or Mr. Andrews was employed either before in January or after —

"MR. ROTH: I'm going to raise an objection to the

insinuation by the prosecutor. The mere fact a man isn't working is not indicative to the fact he's going to commit a crime, and that is the insinuation being brought by the prosecutor. I think that's going too far afield. I think the Court should admonish him and tell him to restrict himself to the facts and not insinuations that didn't occur.

"THE COURT: Well, if the jury remembers that testimony, they may consider it. If no such testimony occurred, then you may disregard what Mr. Wouczyna said.

"MR. WOUCZYNA: Thank you, your Honor. May I continue?"

Michigan courts have on several occasions deplored prosecutorial references to defendant's unemployment or poverty.[1] Apparently, however, prosecutors are not getting the message: Whether defendant—or his girlfriend for that matter—was poor or unemployed is legally irrelevant to the issue of guilt or innocence. This Court refuses to "assume that wealth exerts a greater attraction on the poor than on the rich".[2] To do so would "effectively establish a two-tiered standard of justice and demolish *pro tanto* the presumption of innocence".[3] Our system of justice and its constitutional guarantees are simply too fragile to permit this type of unfounded character assassination. As stated in *People v Henderson,* 80 Mich App 447, 454; 264 NW2d 22 (1978):

---

[1] See, *e.g.,* in addition to cases cited *infra, People v Johnson,* 393 Mich 488, 496-499; 227 NW2d 523 (1975), *People v Hammond,* 394 Mich 627; 232 NW2d 174 (1975), *People v Osborne,* 75 Mich App 600; 256 NW2d 45 (1977), *lv den* 402 Mich 810 (1977), and *People v Leverette,* 84 Mich App 268; 269 NW2d 559 (1978). *Cf. People v Jackson,* 77 Mich App 392; 258 NW2d 89 (1977), *lv den* 402 Mich 830 (1977).

[2] *People v Henderson,* 80 Mich App 447, 453; 264 NW2d 22 (1978).

[3] *People v Ronald Green,* 74 Mich App 601, 606; 254 NW2d 788 (1977), *rem'd* 401 Mich 802 (1977), *op on remand* 79 Mich App 186; 261 NW2d 253 (1977).

"The motive for a theft offense seldom requires explanation. The motive is so pervasive that its proving will establish little more than the defendant's typicality; such proof increases but little the likelihood that this defendant is guilty of the charged offense. If poor and rich share a common and obvious motive, then why prove poverty?"

The questioning and argument in the case at bar cannot be excused as inadvertent, as unobjected to, as invited by defense counsel, or as "fleeting references" in a hotly contested trial.[4] Here the prosecutor specifically stated that he was introducing the subject of unemployment to show motive, and the trial court overruled defense counsel's timely objections to the testimony and argument. We must reverse defendant's conviction and remand for a new trial.[5] "Unless we enforce the rules we encourage their violation * * * ", *People v Farrar,* 36 Mich App 294, 299; 193 NW2d 363 (1971).

Reversed and remanded.

D. E. HOLBROOK, JR., J., concurs in the result only.

---

[4] See *People v Thomas Jones,* 73 Mich App 107; 251 NW2d 264 (1976), *People v Baldwin,* 74 Mich App 700; 254 NW2d 619 (1977), *People v Martin,* 75 Mich App 6; 254 NW2d 628 (1977), *People v Thomas,* 86 Mich App 752; NW2d (1978).

[5] In view of the controversy within this Court, on retrial the trial court would be better advised to instruct on malice as an element of murder. Defendant's remaining issue dealing with "hearsay identification" is clearly without merit.